United States District Court
for the
Southern District of Florida

| | | |
|---|---|---|
| BluestarExpo, Inc., Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 21-20875-Civ-Scola |
| | ) | |
| Jay L. Enis and others, | ) | |
| Defendants. | ) | |

### Order Granting in Part and Denying in Part Motion to Dismiss

Plaintiff BluestarExpo, Inc., seeks to recover $300,000 in payments and $35 million in lost profits from individual Defendants Jay L. Enis, Grovind Srivastava, and Syed Ali Abbas; and entity Defendants The Enis Family Trust (the "Trust"), Soleil[1] Chartered Bank, and R & T Pharmacy Corp. In its second amended complaint ("complaint"), Bluestar lodges seventeen counts against the Defendants, or various subsets of them: fraudulent and negligent misrepresentation (counts one and two, respectively), conversion (count three), civil theft under Florida Statutes section 772.11 (count four), fraudulent conveyance (count five), fraudulent asset conversion (count six), unjust enrichment (count seven), intentional and negligent breach of fiduciary duty (counts nine and ten, respectively), civil conspiracy (count eleven), two counts seeking declaratory judgments regarding piercing the corporate veil as to R&T and Soleil (counts twelve and thirteen, respectively), negligent hiring and retention (counts fourteen and fifteen, respectively), violations of the Florida Deceptive and Unfair Trade Practices Act (count sixteen), and, finally, false information negligently supplied for the guidance of others (count seventeen). (2nd Am. Compl. ("Compl."), ECF No. 33.) The Defendants have jointly filed a motion to dismiss, seeking dismissal of all seventeen claims for a multitude of reasons. (Defs.' Mot., ECF No. 37.) Bluestar has responded (Pl.'s Resp., ECF No. 40) and thereafter the Defendants timely replied (Defs.' Reply, ECF No. 41). After careful review, and for the reasons detailed below, the Court **grants** the motion, **in part**, and **denies** it, **in part** (**ECF No. 37**), dismissing Bluestar's claims for fraudulent misrepresentation (count one), as to only Enis and R&T; negligent misrepresentation (count two), as to only Enis and R&T; conversion (count three), in its entirety; civil theft (count four), as to only Enis, R&T, Srivastava, Abbas, and Soleil; fraudulent conveyance (count five), in its entirety; fraudulent-asset conveyance (count six), in its entirety; unjust

---

[1] The Court adopts the spelling of "Soleil" as used by the Defendants in their briefing.

enrichment (count seven), as to only Enis, R&T, Srivastava, Abbas, and Soleil; intentional breach of fiduciary duty (count nine), in its entirety; negligent breach of fiduciary duty (count ten), in its entirety; declaratory relief (counts twelve and thirteen), as to the remedy sought but not the factual allegations; and negligent hiring (count fourteen), in its entirety.

## 1. Background[2]

Several months into the COVID-19 pandemic, Bluestar began negotiating a deal involving the purchase and immediate resale of thirty-million boxes of powder-free nitrile examination gloves. (Compl. ¶¶ 11.) To that end, Bluestar intended to purchase the gloves from Wish Paradise Corp., for $285 million, and then resell them, upon receipt, to a buyer that Bluestar had already secured. (*Id.*) The expected profit on the deal was $70 million. (*Id.*)

Part of Bluestar's agreement with Wish involved Bluestar's providing Wish "with a 'bank confirmation letter,' also known as a 'comfort letter,' from a reputable banking institution," "[t]o ensure payment of the multi-million-dollar transaction." (*Id.* ¶ 12.) The letter had to confirm "that at least $250,000,000.00 in liquid cash was available to facilitate the transaction," before Wish would move forward with the transaction. (*Id.* ¶¶ 12–13.) In its quest to procure such a letter, Bluestar contacted Enis. (*Id.* ¶ 13.) Enis told Bluestar that his company, R&T, was financially able to provide the funds for the transaction and, therefore, was in a position of being able to secure the comfort letter required by Wish. (*Id.*)

Bluestar and Enis agreed that they would split the profits on the sale of the gloves, evenly, to compensate Enis for his role in the transaction. (*Id.*) Enis also assured Bluestar that the comfort letter would be from a highly reputable bank. (*Id.*) On July 28, 2020, Enis provided Bluestar with what he said was a comfort letter from Soleil. (*Id.* ¶ 14.) The letter was signed by Srivastava, as the managing director of Soleil, and Abbas, as the director of an entity called "MENA Trade Finance." (*Id.*) The letter represented that R&T had "cash funds and/or credit line in the amount of USD 250,000,000.00." (*Id.*) Contrary to the representations in the letter, however, Enis did not have $250 million in cash funds or a valid credit line, nor did Soleil have $250 million available through which it could extend credit to R&T. (*Id.* ¶¶ 14, 18.) According to Bluestar, Soleil provided the fabricated letter simply to prop up Enis's misrepresentation to Bluestar that R&T had access to the funds Enis said it did. (*Id.* ¶¶ 14, 18.)

---

[2] This background is based on the allegations Bluestar presents in its complaint. For the purposes of evaluating the Defendants' motion, the Court accepts Bluestar's factual allegations as true and construes them in the light most favorable to Bluestar per Federal Rule of Civil Procedure 12(b)(6).

At some point during the parties' discussions, Enis told Bluestar that Soleil would charge a fee of .25% for R&T to transfer $250 million to Soleil to then consummate the transaction with Wish. (*Id.* ¶ 15.) Enis said the fee would amount to about $625,000 but that he would split it, with Bluestar's covering $300,000 of the fee. (*Id.*) Enis and R&T also promised Bluestar that the $300,000 would go towards paying Soleil for the comfort letter. (*Id.* ¶ 19.) On July 28, the same day the comfort letter was provided, Enis emailed a Bluestar officer, providing wire instructions for Bluestar to send the $300,000 to the Trust. (*Id.* ¶ 16.) Enis advised that he had already paid his share of the fee in order to procure the comfort letter. (*Id.*)

Less than a week later, on August 2, Bluestar and Wish executed the contract under which Wish would provide the thirty-million boxes of gloves for a total purchase price of $285 million. (*Id.* ¶ 11.) To comply with the comfort letter requirement, Bluestar presented the letter from Soleil, to Wish, confirming R&T's access to $250 million. (*Id.* ¶ 17.) Wish, apparently aware of "Soleil's dishonorable reputation" and that "Soleil is a fraudulent institution," known to provide "fraudulent letters of credit and comfort letter[s]," and known to be "subject to many lawsuits alleging similar fraudulent misconduct," did not accept the letter. (*Id.*) In fact, says Bluestar, although Soleil purports to be a banking institution, organized under the laws of the Union of Comoros, in reality, it "does not offer any true banking services," instead operating only to "provide[] its clients with fraudulent letters of credit and comfort letters" that falsely claim "their clients have funds or credit which they do not possess." (*Id.*) Indeed, "Soleil currently has multiple lawsuits filed against it in the past year that all claim that . . . Soleil refused to honor its letter of credit after various parties using Soleil's letter[s] defaulted." (*Id.*)

After the deal with Wish fell through, Bluestar demanded the repayment of its $300,000. (*Id.* ¶ 18.) In response, Enis said that the $300,000 had already been paid to Soleil for the anticipated Wish transaction. (*Id.*) Enis could not, however, provide any proof that any funds had ever been actually transferred to Soleil or that Enis had ever handed over any of the $300,000 to Soleil. (*Id.*) Indeed, Bluestar says Enis and R&T kept the $300,000 for themselves and never transferred the $250 million to Soleil. (*Id.* ¶ 19.)

From the beginning, Enis and R&T knew that Soleil was a discredited banking institution and that the comfort letter would not be afforded any credibility. (*Id.* 23.) Bluestar now seeks to hold all six Defendants responsible for the $300,000 payment to the Trust as well as the millions of dollars of profits lost when the deal with Wish collapsed.

## 2. Legal Standard

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading must only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint. *See* Fed. R. Civ. P. 12(b)(6). In assessing the legal sufficiency of a complaint's allegations, the Court is bound to apply the pleading standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is, the complaint "must . . . contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). "Dismissal is therefore permitted when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006) (internal quotations omitted) (citing *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## 3. Analysis

An overarching theme presented in the motion to dismiss, is the Defendants' characterization of Bluestar's complaint as largely turning on Bluestar's charge that R&T never actually had $250 million in cash available. As the Defendants frame it, Bluestar's argument is that, because R&T did not actually have these funds, the Soleil comfort letter was wholly false. Attacking Bluestar's argument, as the Defendants themselves teed it up, the Defendants point out that the letter was not necessarily false because it was phrased in the disjunctive, representing only that "R&T Pharmacy either had funds *or* a line of credit available at Soleil Bank." (Defs.' Mot. at 6–7 (emphasis in original).) But, in doing so, the Defendants grossly mischaracterize Bluestar's complaint and, disconcertingly, omit any acknowledgment of the allegations that directly undercut their argument. To that point, as Bluestar demonstrates in its opposition, the complaint not only presents factual allegations that neither

Enis nor R&T had $250 million in cash on hand, but it *also* sufficiently alleges that neither Enis nor R&T ever had a valid credit line for that amount either. (*See* Compl. ¶¶ 14 ("The representations . . . in the comfort letter are false. Enis does not have $250,000,000.00 in cash funds or valid credit . . . .") ("Soleil does not have $250,000,000.00 by which it can extend credit to R&T . . . ."), 18 ("Enis does not have the $250,000,000.00 necessary to complete the transaction and the letter from Soleil is a fraudulent misrepresentation."), 23 ("Enis/R&T does not have $250,000,000.00 in cash funds/credit"), 31 (same), 37 (noting the "fraudulent comfort letter . . . purporting that R&T has $250,000,000.00 of case funds and/or credit, when it did not"), 41 (describing the "fraudulent comfort letter" as "purporting that R&T has $250,000,000.00 of cash funds and/or credit"), 81 (same), 89 (same), 109 (same).) And so, as a starting point, the Court finds the main thrust of the Defendants' argument, in urging dismissal, unavailing.

With this preliminary issue disposed of, the Court turns its attention to the Defendants' more specific arguments, directed at various counts in Bluestar's complaint.

### A. The Defendants have failed to show that all of Bluestar's fraud claims should be dismissed for falling short of Rule 9(b)'s particularity standards.

The Defendants urge the Court to dismiss all ten of Bluestar's fraud-based claims for failing to meet the heightened pleading requirements of Rule 9(b): counts one through six, nine through eleven, and sixteen. In support of their argument, the Defendants complain that Bluestar "fails . . . to recite the date and time of each allegedly fraudulent statement, where each statement was made, the person who made the statement, and fails to connect any of the Defendants to each purported statement with the level of particularity required under Rule 9(b)." (Defs.' Mot. at 8.) The Defendants also complain that Bluestar has impermissibly lumped together all six Defendants, making it "impossible for each of the Defendants to know what they, individually, are alleged to have misrepresented." (*Id.* at 9.) The Court is not persuaded that Bluestar has entirely failed to meet its burden.

Fraud claims are indeed subject to a heightened pleading standard: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy this standard, both parties acknowledge fraud claims "must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants

gained by the alleged fraud." *Leon v. Cont'l AG*, 301 F. Supp. 3d 1203, 1213 (S.D. Fla. 2017) (Williams, J.) (citations omitted). "Allegations of date, time or place satisfy the Rule 9(b) requirement that the *circumstances* of the alleged fraud must be pleaded with particularity, but alternative means are also available to satisfy the rule." *Durham v. Bus. Mgmt. Associates*, 847 F.2d 1505, 1512 (11th Cir. 1988) (emphasis in original); *see also Colonial Penn Ins. Co. v. Value Rent-A-Car Inc.*, 814 F. Supp. 1084, 1093 (S.D. Fla. 1992) (Moreno, J.) (recognizing that the Eleventh Circuit is not as strict as other circuits when it comes to pleading specific times, dates, and places).

Indeed, in evaluating Bluestar's complaint, the Court is mindful that the application of Rule 9(b)'s particularity requirement "must not abrogate the concept of notice pleading." *Durham*, 847 F.2d at 1511. In light of this standard, the Court finds Bluestar has met its burden with respect to, at a minimum, the comfort letter. While Bluestar may not have detailed the exact place "*each*" fraudulent statement was made, or the precise moment "*each*" was issued, Bluestar has identified the specific letter, dated July 28, 2020, containing the allegedly fraudulent statements. Bluestar has sufficiently alleged that Enis and R&T procured the letter, which was drafted by Srivastava and Abbas, on behalf of Soleil. And, based on the misrepresentations in the letter that, as alleged in the complaint, Enis or R&T had the necessary $250 million in cash or credit to move forward with the Wish contract, Bluestar was induced into parting with $300,000.00 by wiring it to the Trust. These allegations sufficiently state a claim under Rule 9(b): they alert the "defendants to the precise misconduct with which they are charged [while] protecting [them] against spurious charges of immoral and fraudulent behavior." *Durham*, 847 F.2d at 1511 (cleaned up). Without more, the Defendants' sweeping claims that the complaint "fails in its entirety to meet the rigorous pleading standards of Rule 9(b)" is overbroad and, as presented, falls far short of supporting dismissal of all the complaint's fraud-based claims.

Similarly lacking is the Defendants' indiscriminate argument that all the fraud-based claims must be dismissed because they "lump[] together all six Defendants, in varying capacities," making it "impossible for each of the Defendants to know what they, individually, are alleged to have misrepresented" or "their unique role in the purported fraud." (Def.'s Mot. at 9.) The Defendants appear to encourage the Court to do their work for them, directing it to sift through each of the ten fraud claims itself to see if and how their defendant-lumping argument fits each claim. The Court declines the invitation but notes, as a general matter, that Bluestar appears to have supplied enough specificity to enable each Defendant to appreciate at least some aspect of their alleged roles in the various fraud claims: Srivastava and

Abbas, on behalf of Soleil, composed the fraudulent comfort letter; Enis, on his own behalf and on behalf of R&T, procured and adopted the letter, providing it to Bluestar; and then Enis, on behalf of the Trust, directed Bluestar to wire $300,000 to the Trust.

### B. The Defendants' argument that Bluestar cannot satisfy the justifiable-reliance element in support of either its fraudulent or negligent misrepresentation claims fails.

Regarding the misrepresentation claims set forth in counts one and two, the Defendants argue that Bluestar could not possibly have justifiably relied on the allegedly fraudulent comfort letter, to its detriment, because Bluestar admitted "it received and had an opportunity to review [the] letter *before* it entered into the Wish contract." (Defs.' Mot. at 10 (emphasis in original).) According to the Defendants, since Bluestar knew Soleil was the bank issuing the letter, and that the letter itself represented that funds could be available through a "letter of credit," Bluestar "could not have reasonably relied on any purported misrepresentations from Defendants about the reputation of Soleil or whether Wish might ultimately accept the letter." (*Id.*) The Court finds Defendants' position flawed.

First, as Bluestar points out in opposition, and as the Defendants acknowledge in reply, justifiable reliance is not a necessary element for a fraudulent misrepresentation claim under Florida law. *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010). Second, as to Bluestar's negligent misrepresentation claim, the Court is left unconvinced by the Defendants' suggestion that Soleil's reputation and the falsity of the letter should have been "obvious" to Bluestar and, therefore, Bluestar should have known better than to rely on any of the alleged misrepresentations. Indeed, the Defendants' characterization of Bluestar's appreciation of the misrepresentations in the comfort letter is at odds with the complaint's allegations. While the Defendants might ultimately come forward with evidence showing that Bluestar was well aware, or should have been well aware, of Soleil's reputation and that the comfort letter was a sham, the Defendants point to nothing in the complaint itself that would lead the Court to this inference.

In sum, the Defendants' attempt to dismiss either of Bluestar's misrepresentation claims, based on their justifiable-reliance arguments, falls short.

### C. Bluestar fails to state a claim for fraudulent conveyance.

Among the Defendants' arguments supporting dismissal of Bluestar's fraudulent-conveyance claim, as set forth in count five, lodged against all six

Defendants, is that any allegations regarding the transfer of the funds at issue are purely speculative. (Defs.' Mot. at 11.) In response, Bluestar does not dispute that that it hasn't alleged a specific transfer but instead maintains it need not do so. Instead, says Bluestar, it "may properly direct its fraudulent conveyance action against the *transaction* of the $300,000.00 to the Trust" and that "[a]ny person involved in that transaction will be liable to return such funds upon a judgment from this Court." (Pl.'s Resp. at 8 (emphasis in original).) The Court disagrees with Bluestar's analysis and finds the complaint's allegations lacking.

"[I]n order to establish a 'fraudulent conveyance' under Florida law, [a] creditor . . . must demonstrate that there was (i) a creditor to be defrauded; (ii) a debtor intending fraud; and (iii) conveyance of property that could have been applicable to payment of the debt due. *In re PSI Indus., Inc.*, 306 B.R. 377, 387 (Bankr. S.D. Fla. 2003). Even if Bluestar's allegations were sufficient to survive dismissal as to the first two elements,[3] its allegations regarding the third element fall far wide of the mark. As to this element, Bluestar alleges "Enis [and] R&T made unjustified payments or transfers of Bluestar's funds to the Trust or to unknown third parties, with the actual intent to hinder, delay, or defraud Bluestar." (Compl. ¶ 51.) These allegations fail for a couple of reasons.

First, Bluestar is incorrect that it "may properly direct its fraudulent conveyance action against the *transaction* of the $300,000.00 to the Trust." (Pl.'s Resp. at 8.) To clarify, Bluestar's payment to the Trust is the transaction that allegedly created the debt that Bluestar now claims rendered it a creditor—that is not the transaction that is the target of Florida's Uniform Fraudulent Transfer Act. The proper target of a fraudulent-conveyance action by Bluestar would, instead, be any transferee that *thereafter* received funds, improperly, from the Trust. Bluestar could also include the Trust in such an action, but the relevant transaction would still be the transfer *from* the Trust, not Bluestar's initial transfer *to* the Trust.

The problem with Bluestar's approach, here, is that it appears to conflate the Trust as the alleged debtor, with the Trust as the alleged transferor. Bluestar's broad pronouncement that "[a]ny person" involved in Bluestar's payment of the $300,000 to the Trust "will be liable to return such funds" (Pl.'s Resp. at 8) under the UFTA is simply an incorrect statement of the law: instead, the focus of the UFTA is a transfer by a debtor of assets or obligations

---

[3] As to the first element, Bluestar submits it became a "creditor" when R&T failed to transfer the $250 million to Soleil, thus entitling Bluestar to the return of the $300,000 it had paid to the Trust to cover Bluestar's share of the transfer fees. (Compl. ¶ 49.) Bluestar further alleges, generally, that, as to the second element, "[a]t all relevant times, Enis, R&T, and the Trust were 'debtors,' as that term is defined in § 726.102(7)." (Compl. ¶ 50.)

"that could have been applicable to payment of the debt due," separate and apart from the transaction that resulted in the debt in the first place. *In re PSI Indus., Inc.*, 306 B.R. at 387; *see also* Fla. State. § 726.105(1)(a) ("A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor; or [w]ithout receiving a reasonably equivalent value in exchange . . . ."); *Edwards v. Airline Support Group, Inc.*, 138 So. 3d 1209, 1211 (Fla. 4th DCA 2014) ("In general, actions under section 726.108 are brought against a recipient or transferee of assets or property, and not a transferor."). In other words, Bluestar has not adequately alleged a conveyance of Trust assets—or any entity's assets for that matter—that could have otherwise gone towards satisfying the debt Bluestar claims to be owed. *Oginsky v. Paragon Properties of Costa Rica LLC*, 784 F. Supp. 2d 1353, 1370 (S.D. Fla. 2011) (King, J.) (noting that to state a claim for fraudulent conveyance, "a plaintiff must allege," among other things, "a conveyance of property which could have been available to satisfy the debt").

Secondly, Bluestar fails to set forth any actual facts supporting its claim that all six Defendants made or received payments out of Bluestar's $300,000 payment to the Trust. Instead, Bluestar simply alleges that Enis and R&T made "unjustified payments or transfers . . . to the Trust or to unknown third parties." These allegations are far too vague and speculative to survive dismissal even under Rule 8(a), never mind under Rule 9(b). *See Oginsky*, 784 F. Supp. 2d at 1370 (finding allegations insufficient to state a claim where the plaintiff failed to differentiate between debtors, creditors, transferors, or transferees).

In sum, then, the Court grants the Defendants' motion to dismiss count five, for fraudulent conveyance, based on Bluestar's failure to state a claim.

**D. Bluestar fails to state a claim for fraudulent conversion.**

In count six, Bluestar seeks to recover against Enis, R&T, and the Trust under a Florida Statutes provision that provides:

> [a]ny conversion by a debtor of an asset that results in the proceeds of the asset becoming exempt by law from the claims of a creditor of the debtor is a fraudulent asset conversion as to the creditor, whether the creditor's claim to the asset arose before or after the conversion of the asset, if the debtor made the conversion with the intent to hinder, delay, or defraud the creditor.

Fla. Stat. § 222.30(2). The Defendants argue this statute section is inapplicable to the facts of this case. The Court agrees.

Although Bluestar generally alleges that Enis, R&T, and the Trust "changed or disposed of . . . funds which have now become immune or exempt by law from claims of potential creditors," Bluestar provides no facts supporting its vague claim. Under the statute section that Bluestar relies on, a "conversion" is defined as the act of "changing or disposing of an asset" such that it is rendered "immune or exempt by law" from creditor claims. Fla. Stat. § 222.30(1).

Without facts identifying any assets that were converted, such that those assets were rendered "immune or exempt" from creditors, Bluestar's claims don't make it out of the gate.

### E. Bluestar fails to state a claim for either intentional or negligent breach of a fiduciary duty.

In its claims for breach of a fiduciary duty (counts nine and ten) against Enis, Bluestar alleges "Enis became a fiduciary to Bluestar" "by promising to ensure that Enis would deliver Bluestar's half of the transfer fee to Soliel" and "by promising to ensure that R&T would pay the transfer fee on Bluestar's behalf by delivering the funds to Soleil for the transfer of the $250 [million]." (Compl. ¶¶ 73, 77.) In opposing the Defendants' position that Bluestar has not sufficiently pleaded facts establishing the existence of a fiduciary relationship, Bluestar insists (1) it has "cleanly set forth . . . facts establishing Enis as a fiduciary . . . since Enis agreed to act as a trusted conduit to facilitate the payment to Soleil" and (2) it has properly pleaded its claim for breach of a fiduciary duty in the alternative to its breach of contract claim. (Pl.'s Resp. at 10.) The Court disagrees as to both points.

"The elements of a claim for breach of fiduciary duty are: the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages." *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002). "A fiduciary relationship may be either express or implied." *Maxwell v. First United Bank*, 782 So. 2d 931, 933 (Fla. 4th DCA 2001). "Express fiduciary relationships are created by contract . . . or can be created by legal proceedings." *Id.* An implied fiduciary relationship, on the other hand, can be inferred from "the circumstances surrounding the transaction and the relationship of the parties and may be found when confidence is reposed by one party and a trust accepted by the other." *Id.* at 933–34 (cleaned up). Regardless of whether the fiduciary relationship is express or implied, a plaintiff must, of course, do more than set forth conclusory allegations or merely recite the definition of a fiduciary relationship. *See Hogan v. Provident*

*Life & Acc. Ins. Co.*, 665 F. Supp. 2d 1273, 1287 (M.D. Fla. 2009) (finding allegations that the plaintiff "placed trust in [the defendant] and that [the defendant] accepted that trust" amounting to nothing more than "conclusory allegations" and a mere recitation of the definition of a fiduciary relationship).

Bluestar doesn't specify whether it believes the parties' fiduciary relationship was express or implied. Regardless, the Court agrees with the Defendants that Bluestar's allegations fall short. Bluestar's allegation that "Enis invited Bluestar's trust and confidence" is simply a regurgitation of the definition of a fiduciary relationship. (Compl. ¶¶ 73, 77.)

Bluestar's additional allegations, that Enis assured Bluestar that if Bluestar provided $300,000, "R&T would pay Bluestar's half of the transfer fee," fare no better. (*Id.* ¶¶ 73, 77.) Instead, these allegations do no more than allege an agreement or business arrangement, through which Enis and Bluestar engaged in an arm's-length, commercial transaction. Such dealings do not amount to a fiduciary relationship. *Hogan*, 665 F. Supp. 2d at 1287 ("[W]hen parties deal at arm's length, a fiduciary relationship does not exist because there is no duty imposed on either party to protect or benefit the other."). Accordingly, the Court agrees with the Defendants that Bluestar's claims, based on Enis's breach of a fiduciary duty, should be dismissed.

### F. The Defendants' argument that Bluestar has not properly alleged causation with respect to its FDUTPA claim fails.

Next, the Defendants argue Bluestar fails to allege, in count sixteen, lodged under FDUTPA, that Solis, Enis, or R&T's deceptive acts or unfair practices caused Bluestar's damages. In support, they point to Bluestar's allegations that Wish declined to accept Soleil's comfort letter because of Soleil's "dishonorable reputation, and because [Soleil] is subject to many lawsuits alleging similar fraudulent misconduct." (Defs' Mot. at 13 (quoting Compl. ¶ 17.) The Court is not persuaded.

FDUTPA generally prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). "In order to assert a claim for damages under FDUTPA, the plaintiff must establish: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Baptist Hosp., Inc. v. Baker*, 84 So. 3d 1200, 1204 (Fla. 1st DCA 2012) (cleaned up). To satisfy the causation element, a plaintiff must "prove that an objectively reasonable person would have been deceived" by the deception or unfair act. *Fitzpatrick v. Gen. Mills, Inc.*, 635 F.3d 1279, 1283 (11th Cir. 2011). As best the Court can parse it, the Defendants' argument seems to be that, because Wish was not at all conned by the sham comfort letter, there could not, therefore,

have been deception. The Defendants miss the mark: they fail to connect, on the one hand, Wish's appreciation of Soleil's suspect reputation and the spurious claims in its comfort letter with, on the other, how an "objectively reasonable person" might have been deceived by not only the comfort letter but also by Enis and R&T's alleged deceptions as well. Without more, then, the Court denies the Defendants' request to dismiss Bluestar's FDUTPA claim on this basis.

### G. Bluestar has failed to supply allegations supporting its request for injunctive relief under FDUTPA.

On the other hand, the Court agrees that Bluestar has not sufficiently alleged its entitlement to injunctive relief. "Article III requires that a plaintiff seeking injunctive relief allege a threat of future harm." *Lombardo v. Johnson & Johnson Consumer Companies, Inc.*, 13-60536-CIV, 2014 WL 10044838, at *6 (S.D. Fla. Sept. 10, 2014) (Scola, J.). Bluestar argues it has standing to pursue injunctive relief by virtue of FDUTPA's providing that "anyone aggrieved by a violation of this part may bring an action . . . to enjoin a person who has violated, is violating, or is otherwise likely to violate this part." Fla. Stat. § 501.211(1). This provision, though, does not, by itself, bestow Article III standing on a plaintiff who cannot otherwise satisfy its demands. FDUTPA simply "cannot supplant [c]onstitutional standing requirements. Article III of the Constitution requires that a plaintiff seeking injunctive relief allege a threat of future harm." *Dapeer v. Neutrogena Corp.*, 95 F. Supp. 3d 1366, 1373 (S.D. Fla. 2015) (Cooke, J.). Because Bluestar has not pleaded any facts indicating a likelihood of future harm, the Court dismisses its claim for injunctive relief under FDUTPA.

### H. Bluestar fails to state a claim for conversion against Enis, R&T, Srivastava, Abbas, and Soleil.

In its conversion claim, set forth in count three, Bluestar alleges Enis, R&T, Srivastava, Abbas, and Soleil all made false statements to induce Bluestar into paying them $300,000, purportedly for the cost of transferring $250 million to Soleil. (Compl. ¶ 38.) In opposing the Defendants' motion to dismiss, Bluestar insists its allegations are sufficient "because the funds were (a) delivered in one act and in one mass, and (b) . . . were delivered to a trust account." (Pl.'s Resp. at 14.) The Court finds Bluestar misconstrues the nature of a conversion claim.

"Under Florida law, a conversion is an unauthorized act which deprives another of his property permanently or for an indefinite time." *Fogade v. ENB Revocable Tr.*, 263 F.3d 1274, 1291 (11th Cir. 2001) (cleaned up) (quoting

Florida law). Accordingly, "in order to state a claim of conversion, one must allege facts sufficient to show ownership of the subject property and facts that the other party wrongfully asserted dominion over that property." *Indus. Park Dev. Corp. v. Am. Exp. Bank, FSB*, 960 F. Supp. 2d 1363, 1366 (M.D. Fla. 2013) (citing *Edwards v. Landsman,* 51 So.3d 1208, 1213 (Fla. 4th DCA 2011)). Further, "[i]n order for money to be an appropriate subject for a conversion claim, there must be an obligation for the receiver to keep intact or deliver the specific money at issue." *Indus. Park*, 960 F. Supp. 2d at 1366. Importantly, "a debt that can be discharged by the payment of money cannot be the subject of a conversion claim under Florida law." *Tikiz Franchising, LLC v. Piddington*, 17-CV-60552, 2017 WL 8780761, at *6 (S.D. Fla. Aug. 1, 2017) (Bloom, J.).

As Bluestar sets forth in its complaint, it wired $300,000 to the Trust on July 28, 2020, which Bluestar understood was to pay for part of the costs of Soleil's transfer fee (Compl. ¶ 16), as well as the comfort letter (*id.* ¶ 19). Bluestar does not, however, supply any factual allegations regarding what happened to the $300,000 after it was wired to the Trust. While Bluestar alleges Enis told it that the $300,000 was delivered to Soleil, Bluestar also recounted Enis's inability to provide proof of that transfer. (*Id.* ¶ 18.) What is missing from Bluestar's complaint are any factual allegations that Enis, R&T, Srivastava, Abbas, or Soleil ever had dominion over the $300,000 or that, even if they had dominion at some point, that any of them had any obligation "to keep intact or deliver the specific money at issue." To state a claim for conversion, Bluestar would have to allege facts showing that it entrusted the $300,000 to Enis, R&T, Srivastava, Abbas, and Soleil, to keep intact for Bluestar's benefit or to later deliver back to Bluestar. *See Tikiz Franchising,* 2017 WL 8780761 at *6 (finding a plaintiff failed to state a claim for conversion where "there [were] no allegations . . . that [the defendant] was obligated to keep the monies intact for [the plaintiff's] benefit or . . . required to deliver the money to [the plaintiff]"). "Although [a] specific amount of money may be identifiable in the sense that [an] identifiable [amount was] paid . . . , this standing alone does not create a tort cause of action for conversion." *Id.*

In sum, without more, the complaint simply fails to supply facts that would support a conversion claim against Enis, R&T, Srivastava, Abbas, or Soleil.

## I. The Court agrees with the Defendants that Bluestar's unjust-enrichment claim should be dismissed as to Enis, R&T, Srivastava, Abbas, and Soleil but not as to the Trust.

As set forth in the complaint, Bluestar wired $300,000 to the Trust. (Compl. ¶ 16.) According to Enis, that amount was to cover Bluestar's share of

the transfer fee charged by Soleil for the $250 million transaction with Wish. (*Id.* ¶¶ 15, 18–19, 65.) Those fees, however, were never incurred because the transaction never went forward. (*Id.* ¶¶ 18, 65.) The Defendants argue Bluestar's unjust-enrichment claims, set forth in count seven, against Enis, R&T, Srivastava, Abbas, and Soleil fail because Bluestar neglects to allege facts showing that any of them received any part of the $300,000 wired to the Trust. Further, the Defendants argue Bluestar's claim fails for the additional reason that it is premised on the complaint's fraud claims. While the Court agrees with the Defendants' first point, it finds the second lacking.

"A claim for unjust enrichment under Florida law requires showing that: (1) plaintiff has conferred a benefit on defendant; (2) defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for defendant to retain it without paying the value thereof." *OJ Commerce, LLC v. Ashley Furniture Indus., Inc.*, 817 F. App'x 686, 692 (11th Cir. 2020). As the Defendants point out, the complaint is devoid of any facts showing that any Defendant other than the Trust received any portion of the $300,000. Instead, Bluestar's allegation that Enis, R&T, Srivastava, Abbas, or Soleil "received a direct benefit from Bluestar" is purely speculative. (Compl. ¶ 66.) Indeed, Bluestar acknowledges as much in its response, referring to "which[]ever one" of the Defendants who may have received the $300,000 from the Trust. (Pl.'s Resp. at 16.) Bluestar's further argument, that the Defendants are collectively implicated in its unjust-enrichment claim because the Defendants "control" the Trust, is also devoid of factual support. (*Id.*) Even Bluestar's specific allegations regarding Enis's "control" and close relation to the Trust are unavailing—Bluestar fails to provide any legal or factual support that would prompt the Court to infer, as Bluestar urges, "that no meaningful distinction exists between Enis and the Trust." (Compl. ¶ 4.) In short, the Court agrees with the Defendants that Bluestar has failed to state a claim for unjust enrichment against any Defendant except for the Trust.

As to the Defendants' second point, they argue Bluestar cannot premise its unjust-enrichment claim on wrongful conduct. In response, Bluestar submits it has pleaded its unjust-enrichment claim in the alternative. (Pl.'s Resp. at 16.) While Bluestar's alternative pleading is not exactly clear, the Court finds that, ultimately, in reading the complaint's allegations in the light most favorable to Bluestar, it has managed to state an unjust-enrichment claim that is distinct from the fraud claims the Defendants point to. That is, apart from the alleged wrongful conduct, Bluestar also alleges all three elements of an unjust-enrichment claim: (1) Bluestar conferred a benefit—the $300,000—on the Trust (Compl. ¶ 16), and (2) the Trust accepted and retained

that amount (*id.* ¶ 18), (3) even though no transfer fee was ever incurred (*id.*). The Court cannot conclude, then, as the Defendants urge it to, that Bluestar's unjust-enrichment claim is wholly "shrouded with allegations of fraudulent and wrongful activity." (Defs.' Reply at 7.) Accordingly, the Court denies the Defendants' motion to dismiss Bluestar's unjust-enrichment claim with respect to the Trust.

### J. The Defendants' argument that the complaint fails to allege that Enis and R&T materially breached the parties' contract is unpersuasive.

The Defendants next assert Bluestar falls short of setting forth a material breach, in count eight, because "[t]he facts as alleged by Bluestar fail to establish that the comfort letter was invalid." (Defs.' Mot. at 17.) As the Defendants portray it, the only problem with the comfort letter was that Wish declined to accept it. (*Id.*) The complaint's allegations, however, clearly undermine the Defendants' characterization of the facts as well as Bluestar's breach-of-contract claim. The Court has no trouble concluding that Bluestar's factual allegations, if true, establish that the comfort letter was a sham: the letter represented that R&T had either "cash funds and/or [a] credit line . . . of USD 250,000,000.00" (Compl. ¶ 14) which Bluestar repeatedly and explicitly alleges was never true (*id.* ¶¶ 14 ("The representations . . . in the comfort letter are false. Enis does not have $250,000,000.00 in cash funds or valid credit . . . .") ("Soleil does not have $250,000,000.00 by which it can extend credit to R&T . . . ."), 18 ("Enis does not have the $250,000,000.00 necessary to complete the transaction and the letter from Soleil is a fraudulent misrepresentation."), 23 ("Enis/R&T does not have $250,000,000.00 in cash funds/credit"), 31 (same), 37 (noting the "fraudulent comfort letter . . . purporting that R&T has $250,000,000.00 of cash funds and/or credit, when it did not"), 41 (describing the "fraudulent comfort letter" as "purporting that R&T has $250,000,000.00 of cash funds and/or credit"), 81 (same), 89 (same), 109 (same)). The Defendants' argument, therefore, that Bluestar's breach-of-contract claim should be dismissed on this sole basis, fails.

### K. The Court is not persuaded by the Defendants' argument that Bluestar fails to state a claim for a civil conspiracy.

The Defendants argue Bluestar fails to state a claim, in count eleven, for civil conspiracy. They maintain, first, that the complaint neglects to set forth facts establishing an agreement among the Defendants. Second, the Defendants complain that the complaint fails to plead any specific tort as the

basis for the civil-conspiracy claim. The Court finds the Defendants' position lacking on both bases.

To begin with, the Defendants' argument that Bluestar has failed to set forth any facts that would support an agreement among the Defendants is both misleading and unworkably vague. As the Defendants describe it, Bluestar's civil-conspiracy claim consists of nothing more than Bluestar's conclusory allegation that the Defendants "conspired with one another to perform the unlawful act of defrauding Bluestar." (Defs.' Mot. at 19 (quoting Compl. ¶ 81).) Characterizing the complaint this way, though, ignores all the other allegations that set forth facts related to Bluestar's conspiracy claim. For example, the Defendants disregard facts showing that (1) Enis and R&T procured a letter from Soleil, signed by Srivastava and Abbas, (2) the letter misrepresented that R&T either had $250 million in cash or credit, and (3) the letter, at least in part, induced Bluestar into wiring $300,000 to the Trust. Without further elaboration from the Defendants, the Court is hard pressed to conclude that this was all done without any kind of agreement that plausibly supports a civil conspiracy. By neglecting to acknowledge all the other facts alleged, the Defendants fall far short of actually substantiating their argument that the complaint contains "no factual assertions supporting the formation of an agreement between any of the Defendants"; "Bluestar only pleads conclusory and unsupported allegations of a conspiracy"; and "Bluestar fails to allege [the agreement] element with any particularity whatsoever, let alone the particularity required under Rule 9(b)." (Defs.' Mot. at 19.)

The remainder of the Defendants' argument is similarly lacking in substance. They complain that "[n]o specific tort is pled as the basis for [the conspiracy] claim." (Defs.' Mot. at 19.) While the Court recognizes that Florida law "does not recognize civil conspiracy as a freestanding tort," *Banco de los Trabajadores v. Cortez Moreno*, 237 So. 3d 1127, 1136 (Fla. 3d DCA 2018), the Defendants fail to persuade, without more, that Bluestar's complaint is wholly devoid of an underlying wrong. This is especially so in light of the Defendants' incorrect presumption that all of Bluestar's other claims "are subject to dismissal." (Defs.' Mot. at 19.) In sum, the Defendants fail to support their arguments that Bluestar's civil-conspiracy claim should be dismissed.

**L. The Court agrees with the Defendants that Bluestar's civil-theft claim should be dismissed as to Enis, R&T, Srivastava, Abbas, and Soleil but not as to the Trust.**

As an initial matter, the Court agrees with the Defendants that since Bluestar has not stated a claim for conversion against Enis, R&T, Srivastava, Abbas, or Soleil, as found in section H., then Bluestar's claim for civil theft, as

presented in count four, against those particular Defendants must also fail. *See Heldenmuth v. Groll*, 128 So. 3d 895, 896 (Fla. 4th DCA 2013) ("If there was no factual basis to support a claim for conversion, there can be no cause of action for civil theft."). This argument, however, does not apply to the Trust since Bluestar did not present a conversion claim against the Trust for the Court to evaluate. Accordingly, the Defendants' perfunctory claim that "Bluestar has not pled a proper claim for conversion," as it relates to the Trust, without more, fails to persuade.

The Court is also not convinced by either of the Defendants' other two arguments that Bluestar's civil-theft claim against the Trust should be dismissed. The Defendants' next argument is that Bluestar fails to present factual allegations showing the Trust's felonious intent. As the Defendants point out, to establish civil theft, "it is necessary to show not only that [the] defendant obtained or endeavored to obtain the plaintiff's property, but that he did so with felonious intent to commit theft." (Defs.' Mot. at 19 (quoting *Palmer v. Gotta Have It Golf Collectibles, Inc.*, 106 F. Supp. 2d 1289, 1303 (S.D. Fla. 2000) (Seitz, J.)).) According to the Defendants, Bluestar's allegations with respect to felonious intent are purely conclusory, solely consisting of its claims that (1) the Defendants "made false statements to Bluestar"; and (2) the Defendants "deprivation of Bluestar's cash funds was criminal in nature." (Defs.' Mot. at 19–20 (quoting Compl. ¶¶ 41, 44) (cleaned up).)  As the Defendants see it, "Bluestar merely relies on the fact that Wish would not accept Soleil's comfort letter and Mr. Enis did not provide proof that he transferred funds to Soleil as a means to suggest the existence of wrongdoing." (Defs.' Mot. at 20.) Once again, the Court disagrees with the Defendants' characterization of the complaint's allegations. The Court finds Bluestar has explicitly alleged that Enis, acting on behalf of the Trust, made deliberately false representations to Bluestar, with the intent to deprive Bluestar of its property to which, according to the complaint, the Trust had no legal right. The Court finds these allegations—of which the Defendants omit any mention—enough to survive the Defendants' arguments for dismissal.

Lastly, the Court does not find the Defendants' arguments regarding notice compelling. Florida Statutes section 772.11 provides that, "[b]efore filing an action for damages [for civil theft], the person claiming injury must make a written demand for $200 or the treble damage amount of the person liable for damages." Fla. Stat. § 772.11(1). The notice must provide "the person to whom a written demand is made" an opportunity to comply with "such demand within 30 days after receipt of the demand." *Id.* The Defendants submit that since Bluestar did not comply with the notice requirement, prior to initiating its suit, its civil theft claim must be dismissed "without prejudice," so that

Bluestar can then replead its claim "after complying with the statute." (Defs.' Mot. at 20; Reply at 9 (quotations in original omitted).) In response, Bluestar says, and the Defendants do not dispute, Bluestar served all the Defendants with the civil-theft notice on May 24, 2021. (Pl.'s Resp. at 22.) Since it appears, then, that Bluestar's failure to provide the notice has been cured, with no response from any of the Defendants, the Court finds dismissal in this particular case would serve no purpose.

### M. The Court agrees with the Defendants, in part, that some of Bluestar's claims are barred by the independent-tort doctrine.

The Defendants argue that the independent-tort doctrine bars tort claims between parties to a contract unless there is proof of a wrong that is independent of the parties' obligations under the contract. Because the Court has dismissed Bluestar's claims for conversion (count three), civil theft against all but the Trust (count four), and intentional and negligent breach of fiduciary duty (counts nine and ten), it only considers the Defendants' argument with respect to Bluestar's claims for fraudulent and negligent misrepresentation (counts one and two), civil theft as to the Trust (count four), civil conspiracy (count eleven), and false information negligently supplied for the guidance of others (count seventeen). After careful review, the Court agrees with the Defendants, only in part, as follows.

"Under Florida's independent tort doctrine, it is well settled that a plaintiff may not recast causes of action that are otherwise breach-of-contract claims as tort claims." *Altamonte Pediatric Associates, P.A. v. Greenway Health, LLC*, 8:20-CV-604-T-33JSS, 2020 WL 5350303, at *5 (M.D. Fla. Sept. 4, 2020) (cleaned up). Here, the contract alleged in Bluestar's breach-of-contract claim required (1) Enis and R&T to provide a valid comfort letter stating R&T had $250 million in cash funds available for the Wish transaction; (2) R&T's transfer of $250 million to Soleil to be used for the Wish transaction; (3) Bluestar to split the profits from the sale of the latex gloves with Enis and R&T; and (4) Bluestar to pay $300,000 for its share of the fee charged by Soleil for handling the transfers. (Compl. ¶ 69.) Bluestar alleges Enis and R&T breached that agreement by failing (A) to provide a valid comfort letter and (B) to transfer the $250 million to Soleil. (*Id.* ¶ 70.)

As to Enis and R&T, the Court agrees with the Defendants that Bluestar's claims for fraudulent and negligent misrepresentation are both simply recast versions of its breach-of-contract claim. At bottom, neither misrepresentation claim is separable from the breach-of-contract claim. The misrepresentation claims both allege that Enis and R&T failed to provide a valid comfort letter and failed to transfer $250 million to Soleil. Further, the

damages stemming from the misrepresentation claims—the $300,000 transfer fee and lost profits—are no different than the damages Bluestar claims in its breach-of-contract claim. Finally, the Court is not persuaded by Bluestar's argument that it has pleaded its tort claims alternatively to its breach-of-contract claims: "It would be contrary to the basic premise of the independent tort doctrine to allow such pleadings in the alternative." *Altamonte Pediatric*, 2020 WL 5350303 at *5. Accordingly, the Court agrees with the Defendants that Bluestar's fraudulent- and negligent-misrepresentation claims, as to Enis and R&T, are indeed barred by the independent-tort doctrine. *See Perez v. Scottsdale Ins. Co.*, 19-CV-22346, 2020 WL 607145, at *2 (S.D. Fla. Feb. 7, 2020) (Gayles, J.) (finding that, under Florida law, "[t]o bring a tort claim concurrently with a contract claim, plaintiffs must plead a tortious action committed separate and apart from the breach of contract" and "for an alleged misrepresentation regarding a contract to be actionable, the damages stemming from that misrepresentation must be independent, separate and distinct from the damages sustained from the contract's breach") (cleaned up).

This conclusion, however, does not apply to any of the claims against Srivastava, Abbas, Soleil, or the Trust. Bluestar does not allege a contract-based claim against any of those Defendants and so the Court fails to see how any of the tort claims against them would, in turn, be barred under the independent-tort doctrine. *See Un2jc Air 1, LLC v. Whittington*, 46 Fla. L. Weekly D1552 (Fla. 4th DCA June 30, 2021) (noting that the independent-tort doctrine "only applies . . . to the parties to the contract"). The Court, therefore, denies the Defendants' motion to dismiss on this basis with respect to the claims of fraudulent misrepresentation, in count one, against Srivastava, Abbas, and Soleil; negligent misrepresentation, in count two, against Soleil; civil theft, in count four, against the Trust; civil conspiracy, in count eleven, against Srivastava, Abbas, Soleil, and the Trust; and false information negligently supplied for the guidance of others, in count seventeen, against Soleil.

Finally, regarding the civil-conspiracy claims against Enis and R&T, the Defendants do not set forth any specific argument that Bluestar's conspiracy claim is indistinguishable from its breach-of-contract claim. And, upon the Court's own review, it indeed appears that the factual allegations in Bluestar's conspiracy claim, involving agreements among all six Defendants, go beyond the breach-of-contract allegations which are limited to Enis and R&T's failure to uphold their end of the parties' bargain.

In sum, then, of the remaining counts at issue, the Court finds the only claims barred by the independent-tort doctrine to be the fraudulent- and negligent-misrepresentation claims against Enis and R&T, as set forth in

counts one and two. The Court is not otherwise persuaded that the doctrine applies to the other counts and/or Defendants.

**N. The Court agrees with the Defendants that Bluestar's claim for negligent hiring should be dismissed but is not similarly persuaded with respect to Bluestar's claim for negligent retention.**

Bluestar has alleged claims for both negligent hiring as well as negligent retention against Soleil, regarding its employment of Srivastava and Abbas, in counts fourteen and fifteen. The Defendants argue Bluestar has failed to state a claim under either theory because it has not alleged (1) the acts complained of were committed outside the scope of employment; (2) that a tort was committed; or (3) that a duty was owed. While the Court readily concludes Bluestar has failed to state a claim for negligent hiring, it finds the Defendants' arguments regarding the negligent-retention claim wanting.

To state a prima facie case for negligent hiring, a plaintiff must allege that:

> (1) the employer was required to make an appropriate investigation of the employee and failed to do so; (2) an appropriate investigation would have revealed the unsuitability of the employee for the particular duty to be performed or for employment in general; and (3) it was unreasonable for the employer to hire the employee in light of the information he knew or should have known."

*Malicki v. Doe*, 814 So. 2d 347, 362 (Fla. 2002). The main difference between negligent hiring versus retention "is the time at which the employer is charged with knowledge of the employee's unfitness." *Mumford v. Carnival Corp.*, 7 F. Supp. 3d 1243, 1249 (S.D. Fla. 2014) (quotation omitted) (Lenard, J.). In Bluestar's negligent retention claim, it identifies four specific fraudulent letters of credit that Srivastava and Abbas provided, involving multiple parties unrelated to this case, implicating a combined total of over $9 million, all of which went into default. (Compl. ¶ 104.) In comparison, Bluestar's negligent hiring claim is composed of nothing but a recitation of the elements of the claim, devoid of any particularity or supporting facts. To illustrate, Bluestar alleges only that (1) "[a]n appropriate investigation into Srivastava and Abbas would have revealed that [they] participated in multiple frauds and that they were not employees that should have been trusted"; and (2) "[i]t was completely unreasonable of Soleil to hire Srivastava and Abbas in light of the information that it knew or should have known about [them]." (Compl. ¶¶ 100 – 101.) The Court readily concludes these conclusory allegations fall woefully short of Bluestar's burden of supplying "sufficient factual matter, accepted as true, to

state a claim to relief that is plausible on its face." *Am. Dental Ass'n*, 605 F.3d at 1289.

On the other hand, while Bluestar's negligent retention claim is clearly not as robust as it could be, the Court cannot say, based on the Defendants' superficial and perfunctory argument, that Bluestar, regarding its negligent-retention claim, has failed to at least submit enough factual content that would "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. There seems to be no dispute that Soleil, as a banking institution, was required to make an appropriate investigation into its employees' suitability for their positions. And, based on the fraudulent letters of credit Bluestar identifies, it would be reasonable to infer that Soleil was, or should have been, well aware of Srivastava and Abbas's unsuitability. Lastly, based on this unsuitability, it is certainly plausible that it was unreasonable for Soleil to retain Srivastava and Abbas as employees. Without a more thorough argument from the Defendants, the Court cannot say that Bluestar has failed to state a claim for negligent retention.

### O. The Court is not persuaded by the Defendants' argument that Bluestar fails to state a claim for false information negligently supplied.

In urging dismissal of Bluestar's claim for false information negligently supplied for the guidance others, lodged against Soleil in count seventeen, the Defendants' argument is twofold. First, they submit that Bluestar fails to allege that the comfort letter was the legal cause of Bluestar's damages. Second, they rely on the independent-tort doctrine as a bar to recovery. The Court finds both arguments lacking.

In support of their first argument, the Defendants' position appears to be that Bluestar's claim, on the one hand, that it was swindled out of the purported $300,000 transfer fee because of the fraudulent comfort letter, is incompatible with, on the other, Bluestar's allegations that the purpose of the comfort letter was to facilitate the transaction with Wish. Without any elaboration from the Defendants, the Court fails to appreciate any inconsistency between these two premises that would warrant dismissal of the claim.

The Defendants' second argument is equally unconvincing and was previously address in section M: the independent-tort doctrine does not apply because Bluestar does not allege a breach-of-contract claim against Soleil.

Accordingly, then, the Court is not persuaded by the Defendants' arguments that Bluestar's false information claim should be dismissed.

**P. Bluestar fails to state claims for declaratory relief.**

In its request for declaratory relief, in counts twelve and thirteen, Bluestar asks the Court to declare that the corporate veil may be pierced for both R&T as well as Soleil, respectively. In essence, Bluestar asks the Court to declare that it may recover damages from Enis for any judgment against R&T and from Srivastava and Abbas for any judgment against Soleil. The Court agrees with the Defendants that Bluestar has improperly sought this remedy through declaratory relief.

Courts have wide discretion in deciding whether to entertain a declaratory judgment action. *Kerotest Mfg., Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183-84, (1952). A declaratory judgment is used to clarify legal relations and not to make factual determinations. *Medmarc Cas. Ins. Co. v. Pineiro & Byrd PLLC*, 783 F. Supp. 2d 1214, 1216 (S.D. Fla. 2011) (Marra, J.). Moreover, "if a district court determines that a complaint requesting a declaratory judgment will not serve a useful purpose, the court cannot be required to proceed to the merits before dismissing the complaint." *Id.* (cleaned up).

Significantly, "a plaintiff seeking . . . declaratory relief must prove not only an injury, but also a real and immediate threat of *future injury* in order to satisfy the 'injury in fact' requirement." *Koziara v. City of Casselberry*, 392 F.3d 1302, 1305 (11th Cir. 2004) (quotation omitted) (emphasis added); *see also Am. Ins. Co. v. Evercare Co.*, 699 F. Supp. 2d 1355, 1359 (N.D. Ga. 2010), *aff'd,* 430 F. App'x 795 (11th Cir. 2011) (unpublished) ("The Declaratory Judgment Act is inappropriate to adjudicate past conduct.") That is "[t]he Declaratory Judgment Act, 28 U.S.C. § 2201, is designed to settle 'actual controversies' *before* they ripen into breaches of contract or violations of law." *Bacardi USA, Inc. v. Young's Mkt. Co.*, 273 F. Supp. 3d 1120, 1127 (S.D. Fla. 2016) (Seitz, J.) (emphasis added). "Past injuries alone generally do not establish declaratory judgment jurisdiction." *Id.* at 1128.

Here, Bluestar asks the Court to make factual determinations regarding events that have already transpired. And although Bluestar vaguely claims it has a present need for a declaration regarding whether R&T and Soleil's corporate veils may be pierced, those factual determinations, based on past conduct that has already damaged Bluestar, would be an improper basis upon which to base an action for declaratory relief.

That said, to the extent Bluestar seeks to pierce R&T and Soleil's corporate veils, the Court will consider the factual allegations in the declaratory relief counts as they relate to Bluestar's attempt to bind Enis, as to any

judgment against R&T, and Srivastava and Abbas, as to any judgment against Soleil.

### 4. Conclusion

For the reasons set forth above, the Court **grants in part and denies in part** the Defendants' motion to dismiss. (**ECF No. 37**). The Court dismisses the following counts in their *entireties*: <u>three</u> (conversion); <u>five</u> (fraudulent conveyance); <u>six</u> (fraudulent-asset conveyance); <u>nine</u> (intentional breach of fiduciary duty); <u>ten</u> (negligent breach of fiduciary duty); <u>twelve and thirteen</u> (declaratory relief); and <u>fourteen</u> (negligent hiring). And the Court dismisses the following counts as to *some Defendants*: <u>one</u>, as to Enis and R&T (fraudulent misrepresentation); <u>two</u>, as to Enis and R&T (negligent misrepresentation); <u>four</u>, as to Enis, R&T, Srivastava, Abbas, and Soleil (civil theft); and <u>seven</u>, as to Enis, R&T, Srivastava, Abbas, and Soleil (unjust enrichment). The aforementioned claims are dismissed for a failure to state a claim under Rule 12(b)(6) and are, therefore, dismissed with prejudice.

Further, the Court **denies** Bluestar's request for **leave to amend**, inserted as an afterthought, in a footnote, in the introductory pages of its twenty-five-page opposition brief: the request is both procedurally defective and lacking in substantive support. *See Newton v. Duke Energy Florida, LLC,* 895 F.3d 1270, 1277 (11th Cir. 2018) ("[W]here a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly."); *Avena v. Imperial Salon & Spa, Inc.,* 740 F. App'x 679, 683 (11th Cir. 2018) ("[W]e've rejected the idea that a party can await a ruling on a motion to dismiss before filing a motion for leave to amend.") (noting also that "a motion for leave to amend should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment") (cleaned up). The deadline for amending the pleadings has also long since passed so Bluestar's request is denied as untimely as well. (Sched. Order, ECF No. 32, 1.)

The Defendants must respond to what remains of the complaint, including the factual allegations within the declaratory judgment counts, on or before **November 5, 2021**. By way of a summary, the following claims, as alleged against the listed Defendants, endure:

| Count | Defendant |
|---|---|
| <u>One</u>: Fraudulent misrepresentation | Srivastava, Abbas, and Soleil |
| <u>Two</u>: Negligent misrepresentation | Soleil |
| <u>Four</u>: Civil theft | The Trust |
| <u>Seven</u>: Unjust enrichment | The Trust |

| | |
|---|---|
| <u>Eight</u>: Breach of Contract | Enis and R&T |
| <u>Eleven</u>: Civil conspiracy | All Defendants |
| <u>Fifteen</u>: Negligent retention | Soleil |
| <u>Sixteen</u>: FDUTPA | Soleil, Enis, and R&T |
| <u>Seventeen</u>: False information negligently supplied | Soleil |

**Done and ordered**, at Miami, Florida, on October 25, 2021.

Robert N. Scola, Jr.
United States District Judge