UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 21-20875-CIV-SCOLA/GOODMAN

BLUESTAREXPO, INC.,

      Plaintiff,

v.

JAY ENIS, et al.,

      Defendants.

_____/

## ORDER ON MOTION *IN LIMINE*

There is no "but-I'm-the-victim-here" exception to the Federal Rules of Civil Procedure.

A plaintiff who was defrauded and files a federal court lawsuit against the alleged fraudsters may well be in a sympathetic situation, but that status does not confer immunity from discovery obligations. This reality is at the core of this Order, which addresses a defense motion seeking to, among other things, prevent Plaintiff from calling a fact witness in its case-in-chief at trial because of a failure to timely disclose the witness in discovery.

In response to the motion, Plaintiff argues that its failure was caused by its contention that the witness is not important because the evidence of fraud is strong

(which suggests the witness' testimony is not necessary). But as this Order will discuss, the witness, who was Plaintiff's primary negotiator for the two contracts at issue, should have been disclosed under the mandatory witness disclosure provisions of Fed. R. Civ. P. 26. And because Plaintiff did not demonstrate that its violation was justified or harmless, the Undersigned's Order here prevents Plaintiff from calling the witness in its case-in-chief. It also contains other rulings about other aspects of the motion.

Defendants Jay Enis, R&T Pharmacy Corp., and The Enis Family Trust (collectively, "Enis Defendants"), filed a motion *in limine* seeking to exclude all evidence of a contract between Bluestarexpo, Inc. ("Bluestar" or Plaintiff) and Wish Paradise Corporation ("Wish"), Wish's alleged rejection of the bank comfort letter ("BCL"), and Defendant Soleil Chartered Bank ("SCB")'s failure to comply with its discovery obligations. [ECF No. 142]. Plaintiff filed a response in opposition [ECF No. 143] and the Enis Defendants filed an optional reply [ECF No. 144].

United States District Judge Robert N. Scola, Jr. referred to the Undersigned the instant motion "for either an order or a report and recommendations, consistent with 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of the Local Magistrate Judge Rules." [ECF No. 179]. The Undersigned is issuing an Order (as opposed to a Report and Recommendations) because rulings on the admissibility of evidence at trial are non-dispositive matters. *See Bennie v. Compaq Computer Corp.*, No. 00-2235-CIV, 2002 WL 34714567, at *1 (S.D. Fla. Oct. 21, 2002) (stating, in the context of a *Daubert* motion,

that "[a] Magistrate Judge may enter an order, as opposed to a report and recommendation, regarding a motion *in limine*").

For the reasons stated below, the Undersigned **grants in part and denies in part**[1] the Enis Defendants' *in limine* motion.

## I.    Legal Standard

A motion *in limine* allows the trial court to rule in advance of trial on the admissibility and relevance of certain anticipated evidence. *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984) (referring to motions *in limine* as any motion to exclude anticipated prejudicial evidence before the evidence is actually offered). A motion *in limine* presents a trial court with pretrial issues regarding admissibility of evidence that a party is likely to present at trial. *Bodner v. Royal Caribbean Cruises, Ltd.*, No. 17-20260, 2018 WL 2471215 (S.D. Fla. Apr. 10, 2018). "The real purpose of a motion *in limine* is to give the trial judge notice of the movant's position so as to avoid the introduction of damaging evidence, which may irretrievably affect the fairness of the trial." *See id.* (citing *Beguolg Inv. Mgmt., Inc. v. Four Seasons Hotel Ltd.*, No. 10-22153-CIV, 2013 WL 750309, at *1 (S.D. Fla. Feb. 27, 2013)).

"A court should exclude evidence *in limine* only when it is clearly inadmissible on all potential grounds." *United States v. Gonzalez*, 718 F. Supp. 2d 1341, 1345 (S.D. Fla. 2010)

---

[1]    As discussed below, "[a]t trial, the [C]ourt may alter [this] ruling based on developments at trial or on its sound judicial discretion." *United States v. Gonzalez*, 718 F. Supp. 2d 1341, 1345 (S.D. Fla. 2010).

(citing *In re Seroquel Prods. Liab. Litig.*, No. 6:06-md-1769, 2009 WL 260989, at *1 (M.D. Fla. Feb. 4, 2009) (internal citations omitted)). "The movant has the burden of demonstrating that the evidence is inadmissible on any relevant ground." *Id.* "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context." *Id.* (internal citation omitted); *see also Zanakis v. Scanreco, Inc.*, No. 1:18-cv-21813, 2019 WL 2215861, at *1 (S.D. Fla. Apr. 11, 2019) (noting that motions *in limine* are "traditionally disfavored because questions of admissibility should be dealt with at trial" but nevertheless granting in part a motion to strike a witness).

"Denial of the motion means the court cannot determine whether the evidence in question should be excluded outside the trial context." *Gonzalez*, 718 F. Supp. 2d at 1345. Further, "denial also does not necessarily mean that all evidence contemplated by the motion will be admitted at trial." *Id.* "At trial, the court may alter its ruling based on developments at trial or on its sound judicial discretion." *Id.* "Even when a trial court does rule on a motion *in limine*, its ruling 'remains subject to reconsideration by the court throughout the trial' and the parties may renew their objections as appropriate." *Bodner*, 2018 WL 2471215, at *1 (quoting *Stewart v. Hooters of Am., Inc.*, No. 8:04–cv–40–T–17–MAP, 2007 WL 1752843, at *1 (M.D. Fla. June 18, 2007)).

II.    **Factual Background**

The relevant (and, at times, disputed) background facts are summarized in Judge

Scola's Omnibus Order on the parties' summary judgment motions:

> Several months into the COVID-19 pandemic, Farris Hussain and Perry
> Crooke, through Bluestar, their North Carolina company, incorporated in
> Delaware in April 2020, began negotiating a deal involving the purchase
> and immediate resale of thirty-million boxes of powder-free nitrile
> examination gloves. To that end, Bluestar says it intended to purchase the
> gloves from Wish Paradise Corp., a Taiwanese company, for $250 or $285
> million, and then resell them, upon receipt, to a buyer that Bluestar had
> already lined up. (Pl.'s Stmt. of Facts ¶ 8, ECF No. 116; Enis Defs' Stmt. of
> Facts ¶5, ECF No. 117.) Bluestar maintains it expected the profit on the deal
> would be at least $30 million. (Pl.'s Stmt. ¶ 13.) Bluestar did not, however,
> have access to the funds, itself, necessary to purchase the gloves. (Enis
> Defs.' Stmt. ¶ 10.)
>
> Much of the parties' dispute centers on whether Bluestar's negotiations
> with Wish ever actually ripened into a contract. Bluestar says that a key
> component of its purported agreement with Wish was its proffering of "a
> bank comfort letter from a U.S.-chartered bank to Wish showing Bluestar's
> ability to tender $250,000,000 in payment." (Pl.'s Stmt. ¶ 10.) The
> Defendants question whether this was really part of Wish's requirements.
> (Enis Defs.' Resp. to Pl.'s Stmt. ¶ 10, ECF No. 129.) In any event, in its quest
> for a comfort letter, Bluestar was introduced to Enis, a Florida citizen,
> residing in Miami Beach, and his company, R&T, a pharmaceutical
> company located in Brooklyn, New York, in May or June 2020, through a
> mutual acquaintance—Crooke's travel agent. (Pl.'s Stmt. ¶¶ 3, 6, 11.)
> According to Bluestar, Enis represented himself and R&T Pharmacy "as
> multibillionaires and transactional lenders who could fund Bluestar's
> transaction with Wish." (*Id.* ¶ 14.) The Defendants, however, dispute this,
> maintaining that Enis never agreed to "fund" the transaction, instead only
> agreeing, through R&T, to provide a bank comfort letter, "confirming the
> availability of $250,000,000 in funds." (Enis Defs.' Resp. Stmt. ¶ 14.) Bluestar
> says that, in exchange for the comfort letter and the funding, it agreed to
> pay Enis 45% of all profits which it estimated would range between $12 and
> $14 million. (Pl.'s Stmt. ¶ 17.) While the Defendants do not dispute the
> percentage breakdown, they insist any profits were to be paid to R&T, as

opposed to Enis himself, and that neither Enis nor R&T ever agreed to fund the transaction. (Enis Defs.' Resp. Stmt. ¶¶ 12, 17.) Enis acknowledges that Bluestar specifically wanted a comfort letter from a United States chartered bank. (Enis Dep. 21:3–5, ECF No. 114-2.)

***

Bluestar says that, ultimately, Wish rejected the letter, complaining that Soleil Bank was not a reputable bank. (Pl.'s Stmt. ¶ 47.) The Defendants dispute this, maintaining Wish never even received the letter, much less rejected it. (Enis Defs.' Resp. ¶ 47.) Wish's involvement or non-involvement notwithstanding, Bluestar maintains the letter was fraudulent because, in reality, R&T had neither $250 million in funds nor a $250 million credit line. (Pl.'s Stmt. ¶ 28.) Bluestar, additionally, complains that Soleil Bank itself also never had control of funds that would be required to back a $250 million credit line. (*Id.* ¶ 33.) Further, says Bluestar, all of the Defendants were well aware of these purported deficiencies and misrepresentations. (*Id.* ¶ 32, 34.) To be clear, the Defendants do not dispute that R&T was unable to fund a $250 million transaction with its own funds. (Enis Defs.' Resp. ¶ 32.) Instead, at the heart of the parties' dispute is whether the comfort letter represented that it could: Srivastava and Abbas maintain that the letter's reference to a credit line relates to the collateral of the transaction—the $250 million worth of nitrile gloves (Srivastava and Abbas's Resp. to Stmt. ¶ 37); while Enis testified, along these same lines, that he only deals with "transaction financing" and that, typically, the credit in a given deal will depend on the transaction itself (Enis Dep. 13:2–8).

As a result of these events, Bluestar seeks not only the return of the $300,000 it paid for the purportedly bogus comfort letter but also the tens of millions of dollars it says it lost out on as a result of the comfort letter's triggering the collapse of its deal with Wish.

[ECF No. 165, p. 2].

Judge Scola's Order, among other things, entered summary judgment against

Plaintiff on the lost profits portion of its breach of contract claim (Count VIII). *Id.* at pp.

20-21.

### III.    Analysis

The Enis Defendants bring the instant *in limine* motion seeking to exclude: (1) the testimony of fact witness Owais Khan,[2] in its entirety; (2) the unexecuted contract attached to the initial complaint ("Unexecuted Contract") and the purported agreement between Wish and non-party Development in Motion (the "DIM Contract"); and (3) evidence of co-defendant SCB's discovery violations.

The Undersigned will address each category in turn.

### A.    Plaintiff May Not Call Khan in Its Case-in-Chief at Trial

On February 17, 2022, the Court issued a Second Amended Scheduling Order which, *inter alia*, extended the discovery period to May 16, 2022. [ECF No. 69].

In this Order, Judge Scola noted that "BluestarExpo recount[ed] [in its motion to extend pretrial deadlines] continued difficulties with extracting discovery from Defendant [SCB], forcing BluestarExpo to resort to Court intervention to obtain discovery that it is clearly entitled to." However, the Order also stated, "**further extensions will not be considered**—this means that any further discovery difficulties must be addressed swiftly, without any delay. The time has come for [SCB], and all parties in this case, to either comply with their discovery obligations or accept the litigation consequences of

---

[2]    The parties use two different spellings of this witnesses' surname, "Khan" and "Kahn", interchangeably. In this Order, the Undersigned, when not directly quoting from the parties' filings, will use "Khan," because that was the spelling used during the deposition of Faris Hussain. [ECF No. 117-1].

not doing so." *Id.* (emphasis in original).

On May 10, 2022, the Undersigned held one of four discovery hearings in this case. At the hearing, the Enis Defendants sought to extend Judge Scola's May 16, 2022 fact discovery deadline to take additional depositions. [ECF No. 96]. The Undersigned denied the *ore tenus* motion and issued a Post-Discovery Hearing Administrative Order, stating, in part:

> The Undersigned will not unilaterally adjust and extend Judge Scola's Second Amended trial scheduling Order [ECF No. 69], especially because, in providing a discovery enlargement, the Order unequivocally provided that "further extensions will not be considered." The May 16, 2022 fact discovery deadline remains as set in Judge Scola's Second Amended Scheduling Order. Of course, **the parties may (if they wish) ask Judge Scola to extend that deadline by filing a motion with the District Judge** whose current scheduling order cautions that "the time has come" for all parties "to either comply with their discovery obligations or accept the litigation consequences of not doing so." [ECF No. 69, p. 1].

*Id.* (emphasis added).

The parties were unable to complete discovery within the court-allotted timeframe and at least three depositions took place after the close of discovery. One of those post-discovery period depositions -- the deposition of Rabbi Abraham Nussenzweig -- took place pursuant to an Order issued by the Undersigned. [ECF No. 107]. The remaining two depositions were of Bluestar's representatives/principals, Faris Hussain and Perry Crooke. They took place on May 19, 2022 and May 24, 2022, respectively -- after the close of discovery and on the parties' own accord.

It was during the deposition of Hussain that the Enis Defendants learned of Owais

Khan. [ECF No. 117-1, p. 41 (159:19-160:4)]. Hussain referred to Khan as "[t]he gentleman who was brokering the deal from Turkey." *Id.* He also referred to Khan as a "good friend." *Id.* at p. 84 (235:19-21). Hussain testified that Bluestar learned from Khan that Wish had rejected the BCL because it believed it was a fake letter. *Id.* at pp. 41-42 (159:19-161:4).

The Enis Defendants note that Bluestar never listed Khan in its Rule 26(a) disclosures. [ECF No. 142, p. 3]. Moreover, they argue that any testimony concerning what Wish representatives told Khan (and Khan, in turn, relayed to Bluestar) about the BCL is "double—or even triple—hearsay." *Id.* In fact, they state that "Bluestar has not offered (and cannot offer) any non-hearsay evidence that Wish ever received—much less rejected—the BCL." *Id.* at 7.

In its response, Bluestar seeks to lay the blame on the Enis Defendants for the late, post-discovery cutoff disclosure of Khan. [ECF No. 143, pp. 2-3 (noting that the Enis Defendants did not depose Hussain and Crooke until after the close of discovery, never sought to take Khan's deposition after learning of his role in the transaction, and never pursued or attempted to pursue "more evidence about Bluestar's relationship and communications with Mr. Kahn")]. Importantly, however, all of these efforts related to this foreign-based witness would have had to take place *after* the close of discovery and without the Court's assistance or, at least with respect to securing Khan's deposition, Plaintiff's assistance. *Id.* at 3 (stating that although Bluestar has no objection to the post-discovery period deposition of Khan, "Bluestar has no control over Mr. Kahn, but will

coordinate with the Defendants to coordinate his deposition if so requested").

Bluestar maintains that, "[t]o the extent his testimony is necessary, Mr. Kahn should be allowed to testify" at trial. [ECF No. 143, p. 4; *id.* at 5 ("To the extent necessary to contravene [the Enis Defendants' claim that the BCL was legitimate], Bluestar may call Mr. Owais Kahn, the person who served to broker the deal between Bluestar and Wish, to testify that the BCL provided by SCB was rejected by Wish due to SCB's reputation as a fraudulent entity and the many lawsuits pending against it.")].

Bluestar does not dispute that it failed to disclose Khan in its Rule 26 disclosures, or at any other time before the close of discovery. It simply states that "[u]ntil Mr. Hussain's deposition, Bluestar did not think Mr. Kahn's testimony was particularly relevant or important because it is patently clear based on the record evidence that SCB is in fact a fraudulent bank and its BCL's [sic] are worthless." *Id.* at 4-5.

Federal Rule of Civil Procedure 26 requires, among other things, that initial disclosures be made by a party without awaiting a discovery request. Those disclosures include: "the name and, if known, the address and telephone number of each **individual likely to have discoverable information**--along with the subjects of that information-- that the disclosing party **may use to support its claims or defenses**, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(i) (emphasis added).

A party has an ongoing duty to supplement its initial disclosures. Fed. R. Civ. P. 26(e)(1). "Parties who fail to satisfy these disclosure and supplementation requirements

are prohibited, pursuant to Fed. R. Civ. P. 37(c)(1), from using the undisclosed evidence 'at trial, at a hearing, or on a motion,' unless the failure is harmless. *Cooley v. Great S. Wood Preserving*, 138 F. App'x 149, 161 (11th Cir. 2005) (citing Fed. R. Civ. P. 37(c)(1)); *see also* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.").

The Enis Defendants maintain that Plaintiff's failure to disclose Khan during the discovery period was a "discovery violation." *See* [ECF No. 144, p. 2 ("Bluestar should accept the consequences of its own discovery violations.")]. The only discovery rules cited by the Enis Defendants are Rule 26(a)(1)(A)(i) (initial disclosures), Rule 26(e)(1) (supplemental disclosures), and Rule 37(c)(1) (failure to disclose or supplement under Rule 26(a) or (e)). [ECF no. 144, p. 3].

They do not cite a Rule 33 violation, such as, for instance, a specific interrogatory asking for the names of all witnesses having knowledge of the facts concerning issues raised in the pleadings. If the Enis Defendants had propounded such an interrogatory,[3]

---

[3]     To the extent that a fact witness interrogatory does exist (and it is unclear from the record that one does), it was the Enis Defendants' duty to bring that interrogatory to the Court's attention. *See Ballard Hosp., LLC v. DGD Transp., LLC*, No. 118CV22556JEMAJ, 2019 WL 12372063, at *2 (S.D. Fla. Mar. 28, 2019) ("'[I]t is not the court's obligation to scour the record' to support a party's motion." (quoting *Joseph v. Napolitano*, 839 F. Supp. 2d 1324, 1329 (S.D. Fla. 2012))).

then Plaintiff would clearly have been required to disclose Khan in response to that interrogatory. *See Brown v. Nocco*, No. 8:16-CV-3155-T-17MAP, 2018 WL 8370065, at *2 (M.D. Fla. Apr. 11, 2018) ("Rule 26(a)'s disclosure requirements are different than the duty to disclose information when an interrogatory is propounded." (citing *Thomas v. Old Town Dental Grp., P.A.*, 300 F.R.D. 585, 588 (S.D. Fla. 2014))). The Enis Defendants never state -- in their Motion or in their Reply -- that they did propound this type of fact witness interrogatory.

So the Enis Defendants are travelling under the argument that Plaintiff committed a Rule 26 violation. Rule 26 does not require disclosure of <u>all</u> individuals with knowledge about a case. It "requires the disclosure of witnesses that the disclosing party **'may use to support its claim or defenses**, unless the use would be solely for impeachment.'" *Thomas*, 300 F.R.D. at 588 (quoting Fed. R. Civ. P. 26(a)(1)(A)(i)) (emphasis added). "Therefore, to the extent that [the disclosing party] is not relying on . . . [a] witness. . . , then it had no obligation to include them *in its initial disclosures*." *Id.* (emphasis in original); *see also Phillips v. Delta Air Lines*, No. 21-80413-CV, 2021 WL 6750538, at *2 (S.D. Fla. Nov. 18, 2021) ("Rule 26 is clear—parties must affirmatively disclose witnesses that they may use to

---

Neither party makes mention of a fact witness interrogatory in their filings and it is not the *Court's* job to comb through the record and hunt for relevant information. *See Yuken Corp. v. Gedcore LLC*, No. 22-20661-CIV, 2022 WL 3701233, at *4 (S.D. Fla. June 21, 2022) ("Judges are not like pigs, hunting for truffles buried in briefs." (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991))).

support their claims and there exists an ongoing duty to supplement those affirmative disclosures." (citing Fed. R. Civ. P. 26(a)(1)(A)(i), (e)(1))).

Although Plaintiff has not expressly argued that it did not -- at the time of its Rule 26 disclosures or at any time during the discovery period -- intend to support its claims with information from Khan, it does say it "did not think Mr. Kahn's testimony was particularly relevant or important because it is patently clear based on the record evidence that SCB is in fact a fraudulent bank and its BCL's [sic] are worthless." [ECF No. 143, pp. 4-5]. This may be Bluestar's inartful way of stating it did not disclose Khan in its Rule 26 disclosures because it did not at that time intend to use Khan to support its claims.

Neither side uses the correct terminology from Rule 26. The Enis Defendants ignore the text of Rule 26(a)(1)(A)(i), which requires disclosure of only those witnesses who "the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." And Plaintiff also fails to track the language of Rule 26(a)(1)(A)(i) when it inartfully argues that it did not believe Khan was "relevant or important." [ECF No. 143, pp. 4-5].

Rule 26(a)(1)(A)(i) refers to witnesses "that the disclosing party **may** use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(i) (emphasis added). Thus, that party needs to disclose a witness if that party "may" rely on that witness' testimony to support a claim or defense. Here, Plaintiff states that until the deposition of Hussain (Bluestar's representative), it "did not think that Mr.

Kahn's testimony was particularly relevant or important[.]" [ECF No. 143, p. 4].

Bluestar can, of course, *say* that now, in response to a motion *in limine*, but the Court does not need to blindly accept the argument.

Defendants say, in their reply, that Plaintiff's relevance argument is "at best, nonsensical, and, at worst, disingenuous." [ECF No. 144, p. 5]. For support, Defendants say that Hussain testified that Kahn "brokered the purported deal and served as the go between on *all communications* with Wish." *Id.* (emphasis in original).

Given that factual background, Defendants point out that Plaintiff now suggests that Kahn will be a key witness at trial, and they note that "[i]f Mr. Kahn's anticipated testimony is relevant, as Bluestar now concedes, then Mr. Kahn's anticipated testimony has *always* been relevant and Bluestar has offered no justification at all, let alone a substantial one, for failing to timely disclose Mr. Kahn." *Id.* (emphasis supplied).

The mere fact that Bluestar contends (even though it did not use the correct language from the rule) that it did not then think that it might use Khan's testimony to support its claims does not control the analysis. If the evaluation were otherwise, then a party could not disclose an important witness in a Rule 26 disclosure and then call that witness at trial, arguing that it did not think at the time of the Rule 26 disclosure that it might need that witness.

As one court observed, such an approach would be ripe for abuse:

Requiring parties to disclose only those witnesses they subjectively intend to use in substantiating their claims, rather than those they merely "may

use" as Rule 26 explicitly requires, would erode the efficacy of the rule's disclosure requirements. *See* Fed. R. Civ. P. 26(a). Parties would be free to engage in the sort of "gamesmanship" Rule 26 intends to prevent by hiding witnesses and evidence that they have to offer from their opposition. *See* Fed. R. Civ. P. 26 advisory committee's note (1993). Such is not the spirit of Rule 26.

*Guzman v. Bridgepoint Educ., Inc.*, 305 F.R.D. 594, 605 (S.D. Cal. 2015).

Moreover, the Court is not required to accept Plaintiff's argument (that it did not become aware of Khan's relevance or importance until Hussain's deposition) at face value. *See Guzman*, 305 F.R.D. at 605 (referring to the "[p]laintiff's argument concerning her lack of intent to use Mr. Ferguson as a witness prior to serving [the] [d]efendants her Second Amended Initial Disclosures" as "dubious" and finding the failure to disclose this witness violated Rule 26).

It seems illogical for Bluestar to represent that it did not have a possible need for his testimony at trial to support its claim when Kahn brokered the deal and was the primary contact person.

Thus, Bluestar's failure to identify Khan in its initial disclosures or in supplemental disclosures violated Fed. R. Civ. P. 26(a)(1)(A)(i). The burden is on Plaintiff, as the non-disclosing party, to establish that the non-disclosure was substantially justified or harmless. *Jetport, Inc. v. Landmark Aviation Miami, LLC*, No. 1:16-CV-23303-UU, 2017 WL 7734096, at *2 (S.D. Fla. July 25, 2017). "When determining whether to exclude the testimony of an untimely disclosed witness the court should consider the following: '(1) the importance of the testimony; (2) the reason for the failure to disclose the witness

earlier; and (3) the prejudice to the opposing party if the witness is allowed to testify.'"

*Tynes v. Fla. Dep't of Juv. Just.*, No. 18-62891-CIV, 2020 WL 13016805, at *2 (S.D. Fla. Aug.

5, 2020) (quoting *Alvarado v. United States*, No. 10-CV-22788, 2011 WL 1769097, at * 1 (S.D.

Fla. May 4, 2011)).

Bluestar argues that "[i]t is facetious for the Enis Defendants to now claim that

they are prejudiced by the lack of disclosure of Mr. Kahn" because "the Enis Defendants

did not pursue seeking Mr. Kahn's deposition." [ECF No. 143, p. 5]. According to

Bluestar, the Enis Defendants "had adequate time to seek further information or to

depose Mr. Kahn, and there was little, if any, prejudice resulting from the nondisclosure."

*Id.* at 6. At the same time, Bluestar acknowledges that it is unlikely that the Enis

Defendants would have been able to take Khan's deposition in Turkey:

> [L]ogistically, the Enis Defendants in all probability could not conceivably
> have arranged to take Mr. Kahn's deposition in Turkey no matter when
> they learned of him. . . . The Enis Defendants have not suggested how they
> could secure Mr. Kahn's deposition in Turkey nor shown any indication
> that Mr. Kahn would have submitted to a virtual deposition instead. If the
> Enis Defendants cannot show how they could have conducted discovery
> from Mr. Kahn under optimum circumstances, they cannot in good faith
> claim prejudice from his potential testimony at trial.

*Id.*

"Prejudice generally occurs when the late disclosure deprives the opposing party

of a meaningful opportunity to perform discovery and depositions related to the

documents or witnesses in question." *Bhoodai v. Emps. Assurance Co.*, No. 3:19-CV-111

(CAR), 2022 WL 4591239, at *16 (M.D. Ga. Sept. 29, 2022). Here, had Khan been disclosed

*during* the discovery period, the Enis Defendants could have tailored their discovery requests to *Bluestar* to include information about Khan, even if it is unlikely that the Enis Defendants would have been able to compel Khan's attendance at a deposition. The Undersigned also finds it prejudicial to the Enis Defendants to allow Khan to voluntarily testify at trial, when, as Plaintiff suggests, it is unlikely Khan would have voluntarily sat for a deposition.

Plaintiff's failure to disclose Khan as part of its Rule 26 disclosures or during the discovery period is also not substantially justified. Plaintiff explains that it "did not originally disclose Mr. Kahn because his testimony did not appear to be relevant to the facts in this case and the Enis Defendants never once indicated that they intended to claim the BCL should have been accepted by Wish until Mr. Hussain's deposition." [ECF No. 143, p. 6].

"Substantially justified means that reasonable people could differ as to the appropriateness of the contested action." *Bhoodai*, 2022 WL 4591239, at *16. In its response, Bluestar describes Khan's role as "brokering the transaction between Bluestar and Wish and serving as the go between on communications over the BCL." [ECF No. 143, p. 5].

Given the nature of this lawsuit, which stems from the alleged failure to consummate a $250 or $285 million contract due to the alleged failure to obtain a valid BCL, and the central role Khan played in the transaction, it is difficult to imagine that Bluestar would not consider Khan an "individual likely to have discoverable

information" under Fed. R. Civ. P. 26(a)(1)(A)(i). Here, Bluestar's failure to list Khan in its Rule 26 disclosures as an individual likely to have discoverable information was not substantially justified.

"When a party fails to comply with Rule 26, the sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation was either justified or harmless." *Predelus v. Atain Specialty Ins. Co.*, No. 21-23382-CIV, 2022 WL 11202228, at *3 (S.D. Fla. Oct. 19, 2022) (citing Fed. R. Civ. P. 37(c)(1)). Because Plaintiff has not shown that its failure to timely disclose Khan was justified or harmless, the Undersigned will exclude Khan as a trial witness.

Additionally, even if the belated, post-discovery period disclosure of Khan could be considered timely (which it could not be), the testimony Plaintiff seeks to introduce through Khan is hearsay and Plaintiff has not shown this testimony falls into a hearsay exception.

"The Federal Rules of Evidence generally prohibit the admission of hearsay statements at trial." *United States v. Santos*, 947 F.3d 711, 723 (11th Cir. 2020), cert. denied, 208 L. Ed. 2d 519, 141 S. Ct. 1048 (2021) (citing Fed. R. Evid. 802). Nonetheless, hearsay is admissible "if it falls within a hearsay exception or exclusion under the Federal Rules of Evidence." *Christian Tennant Custom Homes of Fla., Inc. v. EBSCO Gulf Coast Dev., Inc.*, No. 3:15-CV-585-MCR-CJK, 2017 WL 4102458, at *4 (N.D. Fla. Sept. 15, 2017).

As noted above, Plaintiff states that if, necessary, it intends to call Khan at trial "to

testify that the BCL provided by SCB was rejected by Wish due to SCB's reputation as a fraudulent entity and the many lawsuits pending against it." [ECF No. 143, p. 5]. Plaintiff insists that "[t]his testimony is not hearsay." *Id.* at 6.

> Plaintiff states that:
>
> Kahn may testify as to Wish declining to accept the BCL based on his own knowledge of whether the BCL was in fact accepted by Wish or not. Such testimony does not amount to 'an out of court statement offered to prove the truth of the matter asserted,' *U.S. v. Tyrrell*, 269 F. App'x 922, 930 (11th Cir. 2008), because he will not be quoting a representative of Wish, he will merely be stating the fact that Wish declined to accept the BCL and that the transaction he was attempting to broker could not be consummated.

*Id.* at 7.

The Undersigned is not persuaded by Plaintiff's argument. Plaintiff wants to use Khan's testimony to establish the *reasons* for Wish's rejection of the BCL (i.e., SCB's reputation and pending lawsuits). Wish's explanations for why it was rejecting the BCL *are* hearsay. "Hearsay is an out-of-court statement made by a declarant which is being offered to prove the truth of the matter asserted." *Dorn v. Singletary*, 26 F. Supp. 2d 1335, 1342 (M.D. Fla. 1998). Any statements made by Wish representatives **to** Khan (and Khan's statements to Bluestar's representatives about Wish's statements) were made out of court. Additionally, Plaintiff would clearly be offering these statements for the truth of the matter asserted -- that is, that Wish was rejecting the BCL because it believed the BCL was fake due to SCB's reputation and its status as a defendant in many lawsuits. As such, these statements must satisfy an exception to the hearsay rule. Bluestar has not supplied

one.

In sum, Bluestar has not demonstrated that the late disclosure of Khan was substantially justified or harmless. Therefore, Khan will be excluded as a Plaintiff-called witness at trial pursuant to Fed. R. Civ. P. 37(c)(1).[4] Additionally, Plaintiff has not

---

[4]     Theoretically, the Enis Defendants might somehow succeed in persuading him to voluntarily appear at trial as a defense witness. If that were to occur, then Plaintiff's failure to comply with Rule 26 would not prevent that. But the Undersigned views that as being highly unlikely. Nevertheless, I mention that here in case the unlikely scenario unfolds.

Additionally, this ruling would not preclude Plaintiff from calling Khan at trial *solely* for impeachment purposes, if such testimony is otherwise deemed admissible by Judge Scola. *See Cowley v. Sunset Yacht Charters, Inc.*, No. 10-61928-CIV, 2011 WL 13394793, at *1 (S.D. Fla. July 22, 2011) ("Rule 26 does not require disclosure of witnesses who will be used solely for impeachment, Fed. R. Civ. P. 26(a)(1)(A)(i)[.]"); *Smith v. Waste Mgmt. of Illinois, Inc.*, No. 05-1284, 2008 WL 11366184, at *1 (C.D. Ill. July 24, 2008) ("[T]he mandatory disclosure requirements of Rule 26(a)(1)(A)(i) do not apply to witnesses intended solely for purposes of impeachment."). This too is theoretical because -- based on the information provided in Plaintiff's response -- it is unlikely that Khan would have impeachment testimony, at least impeachment testimony favorable to Plaintiff.

But, for the sake of completeness, the Undersigned is pointing out this scenario, should it arise at trial. *See Poitra v. Sch. Dist. No. 1 in the Cnty. of Denver*, 311 F.R.D. 659, 671 (D. Colo. 2015) ("Rule 26(a)(1)(A)(i) does not require a party to disclose an individual who will be used at trial 'solely for impeachment.' Because my powers of clairvoyance [are] not so refined and I cannot profess to know the nuances of the parties' trial strategies, nothing in this ruling precludes Ms. Ortega from serving in the limited role as an impeachment witness.").

Lastly, the Undersigned notes that had the Enis Defendants identified a fact-witness interrogatory propounded on Plaintiff, then Plaintiff would not be allowed to call Khan even solely for impeachment purposes. *See Johnson v. Statewide Investigative Servs., Inc.*, No. 20 C 1514, 2021 WL 825653, at *10 (N.D. Ill. Mar. 4, 2021) (stating that "[t]he Court [did] not need to decide whether any of the witnesses f[e]ll within Rule 26(a)(1)(A)(i)'s

overcome the Enis Defendants' hearsay objections.

In making this ruling, the Undersigned is not saying that Plaintiff cannot -- through *other* means -- introduce evidence that the BCL was rejected by Wish or that SCB has been a defendant in many lawsuits, provided Plaintiff can overcome any hearsay objections. Rather, the Undersigned is prohibiting Plaintiff from calling Khan in its case-in-chief at trial for two reasons. First, he was not timely disclosed as a witness, in Rule 26 disclosures or at any time during the discovery period. Second, even if he was timely disclosed, his testimony about Wish rejecting the BCL as "fake" or that SCB is the subject of many lawsuits would clearly be inadmissible hearsay. So he would not be able to provide *that* testimony even if he were to appear at trial.

### B.    Plaintiff Will Not Now Be Precluded From Seeking to Introduce the Unexecuted Contract and the DIM Contract at Trial – But It Will Need To Authenticate The Contracts And Successfully Address The Hearsay Challenge

The Enis Defendants also seek to exclude the Unexecuted Contract and the DIM Contract on authenticity and hearsay grounds. The Enis Defendants note that:

> (1) the contract Bluestar attached to the initial Complaint—which it refers to as "the contract"—is unsigned and Bluestar admitted that it never executed that contract or advanced the negotiations past the discussion stage; [and] (2) Bluestar references a different contract in its Reply in Support for Motion for Summary Judgment ("Reply SOF") (ECF No. 135, at ¶ 6) purportedly between Wish and a company by the name of

---

impeachment exception because a failure to timely disclose their identities in response to Plaintiff's Interrogatory No. 2 would standing alone violate Rule 26(e)" and "'[n]o impeachment exception exists for interrogatory responses'" (quoting *Rivera v. United Parcel Serv.*, 325 F.R.D. 542, 547 n. 5 (S.D.N.Y. May 24, 2018))).

"Development in Motion" (not Bluestar), but did not disclose a relationship with or any witnesses from "Development in Motion," or amend its pleadings or its disclosures to reflect this agreement had any relevance to this dispute.

[ECF No. 142, p. 3].

They further argue that "Bluestar has not offered (and cannot offer) any non-hearsay evidence sufficient to authenticate and prove that any of the two distinct contracts involving Wish—the Unexecuted Contract . . . and [the DIM Contract]—are valid and enforceable." *Id.* at 7. According to the Enis Defendants, "Bluestar cannot authenticate either the Unexecuted Contract or the [DIM Contract] as a valid enforceable contract because Bluestar's only evidence that those documents are what they purport them to be is its own uncorroborated, self-serving inadmissible hearsay testimony." *Id.*

Plaintiff states in its response that both agreements are admissible evidence, "probative of an agreement between Bluestar and Wish[.]" [ECF No. 143, p.9]. With respect to the Unexecuted Contract, Plaintiff states that:

To the extent Bluestar will utilize the [Unexecuted Contract] at trial, it will do so for purposes of proving the parties' intention to ultimately execute the [DIM Contract] and to show that the business agreement between Bluestar and Wish was negotiated through exchanges of drafts as a commercial deal of this size usually would be negotiated.

*Id.*

As to the DIM Contract, Plaintiff states that:

The structure of the [DIM] Contract is one typical in the context of the sale and resale of products. **A buyer wishing to purchase products may list the party to which it ultimately plans to resell the products in the contract to**

> **memorialize that the buyer has a final purchaser for the products**. This
> serves to reinforce the ability of the buyer to finance the transaction, and to
> advise the seller as to the destination of the goods. The party to the contract,
> however, is the intermediate purchaser who executes the agreement.

*Id.* at 8 (emphasis added). Plaintiff states that for this reason, "[o]n the first page of the

[DIM] Contract, the contract is described as being between Wish Paradise Corp. and

Development in Motion, '**represented by**: BluestarExpo Inc.'" *Id.* (emphasis added).

Plaintiff further argues that the DIM Contract was authenticated by Hussain in

paragraph 6 of a May 27, 2022 affidavit. *Id.* at 10; *see also* [ECF No. 114-1, ¶ 6 ("On July 31,

2020, Bluestar entered in an agreement with Wish for the purchase of $285 million of

nitrile gloves. A condition precedent to Bluestar's agreement with Wish was that Bluestar

provide Wish with a proof of funds letter to demonstrate to Wish that Bluestar had

control of cash or lines of credit that would enable Bluestar to purchase $250,000,000.00

of nitrile gloves with capital under its control.")]. Plaintiff further states that Hussain was

*prepared* to authenticate the DIM contract during his deposition but was never questioned

about it -- and is prepared to authenticate it a trial. [ECF No. 143, p. 10].

Plaintiff also states that both documents are admissible under the business records

exception, Rule 803(6). *Id.* at 11-12. According to Plaintiff, the Unexecuted Contract and

the DIM Contract "were records created by Bluestar during the time it negotiated with

Wish in the course of its regular business of importing and selling personal protective

equipment" and "Hussain testified as to the documents' authenticity and the nature of

how they were created." *Id.* at 12.[5]

"A contract . . . need only be authenticated in order to be admissible." *Everest Indem. Ins. Co. v. Allied Int'l Emergency LLC*, No. CIV 4:08-CV-678-Y, 2009 WL 2030421, at *2 (N.D. Tex. July 14, 2009). "Authentication of a document is a threshold prerequisite to admissibility." *R.K. v. Kanaskie*, No. 02-61534-CIV, 2006 WL 8450679, at *3 (S.D. Fla. Apr. 28, 2006). "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a).

The proponent of the evidence bears the burden of establishing its authenticity. *United States v. Hussain*, No. 19-11571, 2022 WL 1693540, at *3 (11th Cir. May 26, 2022). The burden "is a light one" under which the proponent "need[s] to establish only a prima facie case that [the documents] are what he claims they are." *In re Int'l Mgmt. Assocs., LLC*, 781 F.3d 1262, 1267 (11th Cir. 2015); *see also Washington v. Vogel*, 880 F. Supp. 1534, 1539

---

[5]     Noticeably absent from Plaintiff's argument are any line-and-page citations to Hussain's deposition where he purportedly testified to the authenticity of either document. Moreover, it is unclear how Hussain could have authenticated the DIM Contract during his deposition, given Plaintiff's prior statement that "Hussain was prepared to authenticate [the DIM Contract] at his deposition taken by the Defendants on May 19 and 24, 2022, *but he was never shown nor asked about this document at the deposition*." [ECF No. 143, p. 10 (emphasis added)].

To the extent Plaintiff is using the term "testify" to mean Hussain's attestations in his affidavit, [ECF No. 114-1, ¶ 6], the Undersigned finds that the one paragraph (quoted in full above) where Hussain references the DIM Contract is not enough to authenticate the document. Nonetheless, and as discussed herein, Plaintiff should be provided with the *opportunity* to authenticate the Unexecuted Contract and the DIM Contract at trial.

(M.D. Fla. 1995) ("Analysis of Eleventh Circuit precedents confirms that the authenticity standard is fairly liberal."). "A more rigorous standard would infringe on the responsibility of the trier of fact—here the jury—to determine authenticity." *United States v. Powell*, No. 20-10941, 2021 WL 3878639, at *2 (11th Cir. Aug. 31, 2021).

"There is more than one acceptable form of document authentication." *Peeler v. KVH Indus., Inc.*, No. 8:12-CV-1584-T-33MAP, 2014 WL 117101, at *13 (M.D. Fla. Jan. 13, 2014). This burden can be met "with circumstantial evidence of the authenticity of the underlying documents through the testimony of a witness knowledgeable about them." *In re Int'l Mgmt. Assocs., LLC*, 781 F.3d at 1267 (citing Fed. R. Civ. P. 901(b)(1)); *see, e.g., Vaughn v. Carnival Corp.*, No. 20-CV-23153, 2021 WL 5566514, at *2 (S.D. Fla. Nov. 29, 2021) (finding that "sworn deposition testimony from [the] [p]laintiff and [the] [p]laintiff's husband [that a handout was provided by the ship's nurse] me[t] the threshold requirement to establish a prima facie case for authenticity"); *Moody v. Coliseum Psychiatric Ctr., LLC*, No. 5:04-CV-364 (DF), 2006 WL 1652281, at *5 (M.D. Ga. June 12, 2006) (finding a contract was authenticated by declaration from an agent of one of the contracting parties "who purport[ed] to have personal knowledge of the function and role of her company, the contractual relationship between her company and [the other party to the contract], and the relationship between her company and [the defendant]").

In *United States v. Pang*, for instance, the Ninth Circuit found no error in the district court's determination that the government had properly authenticated invoices through

circumstantial evidence by showing that the subject invoices:

> were identical to other invoices that were received into evidence, that they
> were matched to carbonless copies of the same invoices in evidence, and
> that the numbers were in sequence with the numbers of other invoices that
> were in evidence. Furthermore, the invoices correlated dollar-for-dollar
> with the cancelled checks.

362 F.3d 1187, 1192–93 (9th Cir. 2004).

Moreover, the mere fact that a contract is unsigned does not mean it cannot ever be authenticated. *See, e.g., Peeler*, 2014 WL 117101, at *13 (finding deposition testimony from corporate representative "that the document 'looks like the agreement that we put in place between KVH Industries and River Park starting back in 1999, but amended and effective date of (sic) April 1st, 2004,' to be sufficient evidence" to authenticate an unsigned contract where there was no evidence of fabrication); *Fine v. Guardian Life Ins. Co. of Am.*, No. CV 3:19-30067-KAR, 2022 WL 673663, at *5 (D. Mass. Mar. 7, 2022) ("[E]mployees with personal knowledge about the operations of the field representative system and documents related to the system . . . authenticated the [field representative agreement ("FRA")] attached to . . . [a] declaration as the FRA that was in effect in 1997 and that [the plaintiff] would, therefore, have signed."); *Yong Kui Chen v. Wai Yin Chan*, 615 F. App'x 10, 13 n.1 (2d Cir. 2015) ("[T]he mere fact that an agreement is unsigned does not make it *per se* inadmissible" because "[s]uch a document may be authenticated by other means[.]").

Plaintiff should be provided with the opportunity at trial to establish a prima facie case that the Unexecuted Contract and the DIM Contract are what they purport to be. Fed. R. Evid. 901(a).

If Plaintiff is able to make a prima face case under Rule 901(a), then the Enis Defendants will be able to cross-examine Plaintiff's witness(es) about myriad aspects of the draft agreement (e.g., it was a mere draft which was not fully executed, Plaintiff has no evidence to prove that Wish actually existed, Plaintiff claimed that the draft agreement was the operating contract but changed its mind at the last minute to contend that an agreement between Wish and Development in Motion is the actual contract at issue, Plaintiff never amended its Complaint to say that the second contract, not the draft, is the operative agreement, etc.).

Additionally, Plaintiff *might* be able to introduce the DIM Contract between Wish and Development in Motion (with Bluestar serving as its agent) under the business records exception, Fed. R. Evid. 803(6). The fact that Bluestar may or may not have drafted the DIM Contract is of no moment. "[T]he rule requires only the testimony of a witness 'who is knowledgeable about the procedures used to create the alleged business records,' and the 'witness does not need firsthand knowledge of the contents of the records, of their authors, or even of their preparation.'" *Wells Fargo Bank, Nat'l Ass'n v. Choice Medicine: Hwy 53 Med. Ctr.*, No. 5:19-CV-00247-AKK, 2020 WL 2557927, at *3 (N.D. Ala. May 20, 2020) (quoting *In re Int'l Mgmt. Assocs., LLC*, 781 F.3d at 1268); *see also R & T*

*Roofing Contractor, Corp. v. Fusco Corp.*, 265 F. Supp. 3d 145, 148 (D.P.R. 2017) ("While Mr. Legen may not have drafted these documents, the 'qualified witness' requirement does not require original authorship for the record of regularly conduct[ed] activity hearsay exception to apply. A qualified witness is simply someone who can explain and be cross-examined concerning the manner in which the records were made and kept." (quoting *Wallace Motor Sales, Inc. v. Am. Motors Sales Corp.*, 780 F.2d 1049, 1060-61 (1st Cir. 1985))). (citations omitted).

The Eleventh Circuit has stated that:

> The touchstone of admissibility under Rule 803(6) is reliability, and a trial judge has broad discretion to determine the admissibility of such evidence. *United States v. Arias-Izquierdo*, 449 F.3d 1168, 1183 (11th Cir. 2006). "To be admitted under that exception the person who actually prepared the documents need not have testified so long as other circumstantial evidence and testimony suggest their trustworthiness. Nor is it required that the records be prepared by the business which has custody of them." *United States v. Parker*, 749 F.2d 628, 633 (11th Cir. 1984).

*United States v. Collado*, 439 F. App'x 845, 848 (11th Cir. 2011).

Here, it is possible that Plaintiff may be able to establish through the testimony of Bluestar's representatives the circumstances surrounding the preparation of the DIM Contract. A final ruling will await trial, because Judge Scola will need to determine at trial whether Plaintiff established the business records exception and established that Development in Motion authorized Bluestar to act as its agent for purposes of signing the agreement (and can authenticate the signature of the Bluestar representative who

supposedly signed for Development in Motion).[6] *See Stewart v. Hooters of Am., Inc.*, No. 8:04-CV-40-T-17-MAP, 2007 WL 1752873, at *1 (M.D. Fla. June 18, 2007) ("If evidence is not clearly inadmissible, evidentiary rulings must be deferred until trial to allow questions of foundation, relevancy, and prejudice to be resolved in context." (citation omitted)).

Even if the DIM Contract is ultimately admitted, the Enis Defendants will be able to pursue myriad points on cross-examination, including that Plaintiff's lawsuit still says that the Unexecuted Contract is the controlling agreement, the DIM Contract is technically with Development in Motion, Plaintiff did not come up with the theory that the second contract (the DIM Contract) is the one at issue until long after it filed the lawsuit, Plaintiff provided a copy of the DIM Contract in discovery but never indicated in any way its significance or that it would be relying on it as "the" operative contract until long after it filed its lawsuit, Plaintiff never changed its theory about which contract was the contract at issue until after Defendants argued in a motion that the unexecuted

---

[6]      The Enis Defendants also argue that the DIM Contract should be excluded because "Bluestar referenced that agreement for the first time in its Reply SOF, did not disclose Development in Motion or its intention to rely on the agreement in its Rule 26 Disclosures, and never amended its Second Amended Complaint to make any reference to this purported contract as the basis for its claims." [ECF No. 142, pp. 13-14]. However, Plaintiff provided a copy of the DIM Contract in an email to the Enis Defendants' counsel on January 14, 2022, well before the close of discovery. [ECF No. 126-1, pp. 53-60]. The Undersigned finds that with respect to the DIM Contract, the Enis Defendants cannot show prejudice.

draft contract was inadmissible hearsay, Bluestar never produced any correspondence or other evidence to corroborate its point that **negotiations** led up to the contracts, etc.

Issues related to the Unexecuted Contract and the DIM Contract go to the weight and credibility of Plaintiff's proffered evidence, which the jury will have an opportunity to assess, *if* Plaintiff is able to show these documents are admissible under the Federal Rules of Evidence. *See In re Int'l Mgmt. Assocs., LLC*, 781 F.3d at 1267. ("Once [a] prima facie showing of authenticity [has been] made, the ultimate question of the authenticity of the documents . . . [is] left to the factfinder[.]").

Thus, the Undersigned will not exclude the agreements on authenticity or hearsay grounds at this pre-trial juncture. If, at trial, Plaintiff is able to lay a proper foundation for the authentication of the Unexecuted Contract and show that the DIM Contract falls within the business records exception, then the Enis Defendants may point out to the jury the aforementioned perceived weaknesses in Plaintiff's evidence. At this point, however, a definitive ruling would be premature.

### C.    Plaintiff May Not Introduce Evidence of SCB's Discovery Violations

Lastly, the Enis Defendants seek to exclude evidence of SCB's discovery violations. On September 2, 2022, Judge Scola adopted the Undersigned's Report and Recommendations, recommending that SCB's pleadings be stricken and that Bluestar be awarded attorney's fees as a result of SCB's discovery violations. [ECF No. 153]. The Enis

Defendants seek to exclude evidence of SCB's discovery violations on the grounds that this evidence is both irrelevant and unfairly prejudicial.

The Enis Defendants note that they had no control over SCB's participation (or non-participation) in discovery and that allowing Plaintiff to introduce evidence of SCB's discovery violations "would result in an impermissible adverse inference akin to non-mutual offensive issue preclusion against innocent Defendants." [ECF No. 144, p. 11].

Plaintiff states in its response that its "primary theory of liability against the Enis Defendants is that they knew, or should have known, that SCB was a fraudulent enterprise and that the [BCL] Enis obtained from it was worthless." [ECF No. 143, p. 3]. Plaintiff believes SCB's discovery violations (which post-date the issuance of the BCL) are relevant to establishing the Enis Defendants' liability. According to Plaintiff,

> SCB's discovery failures immediately call into question SCB's legitimacy **and raise a direct inference that had Enis made simple inquiries of SCB similar to those Bluestar sought in discovery he would have been met with similar stonewalling, which no experienced financier would have accepted. Hence, evidence of SCB's fraud and discovery failures is in fact evidence of Enis' fraud and is entirely appropriate to be admitted in evidence as against the Enis Defendants.**

*Id.* at 3-4 (emphasis added).

"Federal Rule of Evidence 403 . . . permits a district court to exclude otherwise relevant evidence if 'its probative value is substantially outweighed' by certain considerations, including the danger of unfair prejudice, confusion of the issues, or misleading the jury." *Sumner*, 522 F. App'x at 810 (quoting Fed. R. Evid. 403). Moreover,

31

"exclusion of relevant evidence under Rule 403 is 'an extraordinary remedy that should be used sparingly' and only after looking at the evidence 'in the light most favorable to its admission.'" *ML Healthcare Servs., LLC v. Publix Super Mkts., Inc.*, 881 F.3d 1293, 1303 (11th Cir. 2018) (quoting *United States v. Flanders*, 752 F.3d 1317, 1335 (11th Cir. 2014)).

Plaintiff cannot elicit testimony about the failure of a co-defendant (SCB) to timely produce documents in discovery because it is not relevant and because it would be unduly prejudicial. Under the Rule 403 balancing test, evidence of SCB's discovery violations should be excluded from trial. The Undersigned finds little (if any) probative value in this evidence in terms of establishing the liability of the Enis Defendants.

Plaintiff intends to argue at trial that the Enis Defendants "knew, or should have known, that SCB was a fraudulent enterprise and that the [BCL] Enis obtained from it was worthless." [ECF No. 143, p. 3]. SCB's discovery failures, which occurred approximately two years after the July 28, 2020 BCL, have no bearing on what the Enis Defendants knew or should have known about SCB *at the time* the BCL was issued.

Moreover, the Undersigned finds there is a real danger of unfair prejudice to the Enis Defendants if evidence of SCB's discovery non-compliance is introduced at trial. The jury could, for instance, ascribe meaning/motives to SCB's discovery violations and impute them to innocent co-defendants.

In *Candy Craft Creations, LLC v. Gartner*, the district court excluded evidence of a defendant withholding documents during discovery, in part, because such "evidence

ha[d] a significant danger of causing unfair prejudice and confusion of the issues, as well as misleading the jury, unduly delaying the trial of this case, and wasting time." No. 2:12-CV-91, 2015 WL 6391202, at *8 (S.D. Ga. Oct. 22, 2015), objections overruled, No. CV 212-091, 2015 WL 7738069 (S.D. Ga. Dec. 1, 2015). The court noted that "there exist[ed] a significant probability that the jury would not merely use evidence that [the] [d]efendants withheld documents during discovery to gauge [the] [d]efendants' knowledge, intent, or bad faith, but also as an impetus to punish [the] [d]efendants for conduct during the litigation." *Id.*

Similar concerns are present here, where Plaintiff will likely argue -- for instance, in support of its civil conspiracy count -- that all of the defendants acted in concert. The jury could mistakenly believe that SCB withheld discovery with the Enis Defendants' assistance or approval.

In sum, the Undersigned finds that the danger of unfair prejudice outweighs whatever minimal (if any) probative value evidence of SCB's discovery violations may have on the liability of the Enis Defendants.

## IV.    Conclusion

The Undersigned **grants in part and denies in part** the Enis Defendants' motion *in limine*. Plaintiff will have an opportunity to authenticate the Unexecuted Contract and the DIM Contract at trial. However, Plaintiff will not be permitted to call Khan in its case-in-chief and the parties may not introduce evidence of SCB's discovery violations.

Defendants may arrange for Khan to appear at trial, and, if they are successful, neither side may elicit hearsay testimony from him about the reasons why Wish rejected the BCL.

**DONE AND ORDERED** in Chambers, in Miami, Florida, on November 9, 2022.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Robert N. Scola, Jr.
All Counsel of Record